Sullivan
No. 6587

PETER R. PREVITE, INC.

v.

McALLISTER FLORIST, INC.
ROBERT W. McALLISTER
SHIRLEY A. McALLISTER

October 31, 1973

*Leahy & Denault (Mr. Albert D. Leahy, Jr.* orally) for the plaintiff.

*Buckley & Zopf (Mr. Robert B. Buckley* orally) for the defendants.

GRIFFITH, J. The plaintiff in this case after trial by the court obtained a verdict in the amount of $9,728.72 against the corporate and individual defendants for flowers delivered to the corporate defendant. The exceptions of the individual defendants to the denial of their motions for nonsuits, directed verdicts, and to set aside the verdicts were reserved and transferred by the Trial Court, *Loughlin*, J.

The sole question presented by this transfer is whether the evidence and all proper inferences considered most favorably to the plaintiff would permit the trial court to discard the corporate entity and hold the individual defendants for the corporate account. *Hardware Mut. Cas. Co. v. Hopkins*, 106 N.H. 412, 213 A.2d 692 (1965). No special findings of fact or rulings of law were requested of the trial court and none was made.

The plaintiff is a corporation wholly owned by Peter R. Previte engaged in the wholesale flower business in the Boston market. In April of 1971, Peter Previte was visited by a man he understood to be named Don McAllister, who told him he wished to purchase flowers for McAllister, a wholesale florist business in Charlestown, N.H. Previte told Don that he was familiar with the firm although he had never sold to them but that he thought they were located in Vermont. Don told him they were now located in Charlestown. He referred to Mr. and Mrs. McAllister as "Mom" and "Dad" and told Previte that Mr. McAllister was not well and that he, Don, had taken over the buying and selling of flowers. At the trial, Mrs. McAllister and Don testified that "Don" was Don Emery, a son-in-law of Mr. and Mrs. McAllister and that he commonly referred to Mr. and Mrs. McAllister as "Mom" and "Dad". Previte told Don that he would be able to service them on the usual terms in the trade.

Beginning on April 19, 1971, and continuing until June 3, 1971, when the last shipment was made, Previte shipped flowers to McAllister in Charlestown with a total billing of $11,669.36. These were invoiced generally to McAllister or Don McAllister Florist. On June 5, 1971, Previte received a letter dated June 4, 1971, from McAllister Florist, Inc., signed by Shirley A. McAllister, treasurer. This letter

informed him that due to the prolonged illness of Robert McAllister and the weakened economy of the area they were liquidating their business with the cooperation of the banks. The letter stated they expected by liquidation to pay all accounts owing suppliers "who have met our needs for so many years." Enclosed was a check on account for $1,083.71 from McAllister Florist, Inc.

Previte called Mrs. McAllister on the telephone and his accountant, Charles Harvey, went to Charlestown and talked with Robert McAllister. Neither conversation was productive except for assurances that although the McAllisters had had reverses due largely to Mr. McAllister's illness they hoped to pay all their bills. On November 9, 1971, Shirley McAllister wrote again to Previte enclosing a check for $831.95 and stating that both the greenhouses and their personal home were up for sale.

Mrs. McAllister testified that she and Mr. McAllister began the wholesale florist business as a proprietorship in Brattleboro, Vermont in 1960. In 1966 they moved the business to Charlestown, New Hampshire, and in 1967 incorporated as McAllister Florist, Inc. She testified that Don Emery, their son-in-law, was purchasing agent and authorized to buy merchandise. From her testimony it appeared that at the time of the trial all physical assets of the corporation had been foreclosed on by the banks which held the mortgages on the corporate property.

In denying the motion for nonsuit against the individual defendants the trial court remarked he was doing so on the basis of *Cote Brothers v. Granite Lake Realty Co.,* 105 N.H. 111, 193 A.2d 884 (1963). The parties have assumed from this remark that by its decision the court disregarded the corporate entity in reliance upon the following dictum in that case: "[I]t is unnecessary to consider whether the Court's ruling could be sustained on another ground by disregarding the corporate entity to prevent inequity or hardship to mercantile creditors." *Id.* at 113, 193 A.2d at 886.

In a variety of situations this court has not hesitated to disregard the fiction of the corporation as a being independent of those who are associated with it as stockholders. *Dow*

*v. Railroad,* 67 N.H. 1, 36 A. 510 (1887); *Bowditch v. Company,* 76 N.H. 351, 82 A. 1014 (1912); *Boston & Maine R.R. v. Railroad,* 86 N.H. 217, 166 A. 275 (1933); *Lund Company v. Rolfe,* 93 N.H. 280, 41 A.2d 226 (1945); *N.H. & c. Beverage Ass'n v. Commission,* 100 N.H. 5, 116 A.2d 885 (1955).

While none of the above cases involved the rights of creditors to reach through the corporate veil and hold the stockholders personally liable for a corporate debt the dictum in the *Cote Brothers* case presaged such a result and the corporate entity has recently been disregarded in the case of a fraudulent conveyance. *Stephenson v. Stephenson,* 111 N.H. 189, 194, 278 A.2d 351, 355 (1971).

Certainly one of the desirable and legitimate attributes of the corporate form of doing business is the limitation of the liability of the owners to the extent of their investment. 2 G. Hornstein, Corporate Law and Practice § 751 (1959). Thus when a corporate enterprise becomes insolvent a creditor may not look to the individual stockholders for payment of his debt in the absence of unusual circumstances. 1 W. Fletcher, Private Corporations §§ 41, 44, 45 (perm ed. rev. vol. 1963); *Automotriz Del Golfo De Cal. v. Resnick,* 47 Cal. 2d 792, 306 P.2d 1, 63 A.L.R.2d 1042 (1957); 1 H. Oleck, Modern Corporation Law § 10 IV 53 (1958); 2 G. Hornstein, *supra* § 756.

There is a lack of sufficient evidence in this case to permit a disregard of the corporate entity and to charge these individual defendants. There was no evidence of the capitalization of the corporation or its assets. There was no evidence that the plaintiff in this case gave any consideration to whether it was dealing with a corporation or a partnership. The evidence would not permit a finding and it is not claimed that defendants suppressed the fact of their incorporation or misled the plaintiff as to the corporate assets. There was evidence that the truck Don drove and which Previte examined carried the name McAllister Florists, Inc. on its panel and that prior to the letter of June 4, 1971, a memo was received by Previte, Inc. in the corporate name.

"The shareholder . . . will be liable for corporate obligations when it suppresses the fact of incorporation, . . . or when

it creates a false appearance which causes a reasonable creditor to misapprehend the worth of the corporate obligor." Comment, 28 Ohio St. L.J. 441, 468 (1967). The foregoing appears a reasonable formula for disregarding the corporate entity but this case does not fall within its ambit.

*Defendants' exceptions sustained;
judgment for individual defendants.*

All concurred.