Merrimack
No. 81-336

CHARLES H. DRUDING & a.

v.

ERIC ALLEN & a.

CHARLES H. DRUDING & a.

v.

AMESBURY REALTY CORPORATION

ERIC ALLEN & a.

v.

AMESBURY REALTY CORPORATION

September 10, 1982

*Law Offices of Stanton E. Tefft,* of Bedford (*Stanton E. Tefft* on the brief and orally), for Charles and Judith Druding.

*Sulloway, Hollis & Soden,* of Concord (*Amy K. Eckman* on the brief and orally), for Eric and Ruth Allen.

*McSwiney, Jones & Semple,* of Concord (*Ronna F. Wise* on the brief and orally), for Amesbury Realty Corporation and Thomas Astles.

Bois, J. The defendant, Amesbury Realty Corporation (Amesbury), appeals from an order of the Superior Court (*DiClerico,* J.), entered in accordance with a Master's (*Frank B. Clancy,* Esq.) recommendation, requiring the president of the defendant corporation to make certain funds available for satisfaction of the corporation's obligations. We reverse.

In the early 1960's, Thomas Astles organized the defendant corporation, a close corporation engaged in real estate development and construction. Mr. Astles was the president, treasurer, principal stockholder and a director of the corporation.

The immediate dispute stems from transactions involving the corporation, Eric and Ruth Allen, and Charles and Judith Druding. The Allens purchased certain real estate from Amesbury and conveyed the property in 1973 to the Drudings. In October 1977, after discovering a variance between the actual and represented boundaries of the realty, the Drudings sued the Allens and Amesbury for misrepresentation and breach of warranty covenants. The Allens thereafter brought suit for indemnification against Amesbury. Neither the Drudings nor the Allens named Thomas Astles as a party defendant in these actions. In September 1979, the

Drudings received a judgment of $6,975 against the Allens, who obtained a judgment for the same amount in the indemnity action against Amesbury. The Allens also obtained an award of attorney's fees against the corporation in the sum of $4,412. Amesbury's total liability therefore amounted to $11,387.

Amesbury was dissolved by the legislature in October 1979, one month after the issuance of the judgments in the Druding-Allen actions. At the time of the dissolution, Amesbury's entire liability in these actions remained outstanding.

Because the Drudings believed that the assets of the dissolved corporation were insufficient to satisfy the outstanding judgments, they filed a motion in superior court on May 20, 1980, to attach the personal real estate of Thomas Astles. They claimed that Astles had intentionally depleted the corporate assets in order to prevent them from collecting on their judgments. Upon learning of the imminent sale of Astles' real estate, the Superior Court (*Cann*, J.) granted an *ex parte* attachment pending a hearing on the May 20 motion. The parties agreed to permit the sale of the real estate and to place certain net proceeds from the sale in escrow until final determination of the case.

On November 5, 1980, a preliminary hearing was held on the motion for attachment. The Master (*Frank B. Clancy*, Esq.) found that the Allens and the Drudings had a reasonable likelihood of recovering judgments against Astles. In accordance with this finding, the Superior Court (*Dalianis*, J.) granted a pre-judgment attachment on the escrowed funds.

A full hearing on the merits of the case was held on June 10, 1981. The testimony at this hearing focused on the activities of the corporation and Mr. Astles from 1977 to 1979, the period between the initial filing of the Druding-Allen actions and the rendering of the judgments in these cases. The testimony indicated that during this time Mr. Astles had sought to wind up the affairs of the corporation.

The Master (*Frank B. Clancy*, Esq.) found that all of the corporation's income during the period in question was produced through the efforts of Mr. Astles, who drew $17,982 from the corporation as compensation for his services in this period. This sum, which the corporation designated as commissions, was equivalent to the corporation's total net income during these years. The master further found that between 1976 and 1979, Amesbury neither held regular meetings of directors and stockholders, nor maintained corporate records. Finally, according to the master's findings, the evidence showed that the corporate assets remained

essentially stable after 1976 but that the corporation was undercapitalized in its last years.

The master found that the court had jurisdiction in the controversy, despite the plaintiffs' failure to join Mr. Astles as a party defendant, because *in rem* jurisdiction existed over the escrowed funds. Apparently relying on the doctrine of fraudulent conveyances, *see* RSA 545:5, the master indicated that Astles had diverted $17,982 from the corporation and that it would have been unfair to permit Astles to retain these funds to the exclusion of the judgment creditors. The master also seemed to rely on the theory of piercing the corporate veil, *see Peter R. Previte, Inc. v. McAllister Florist, Inc.*, 113 N.H. 579, 581–82, 311 A.2d 121, 123 (1973), suggesting that Astles should be held liable for the judgments against the corporation because the corportion had acted as his alter ego between 1977 and 1979. Based on these theories, the master recommended that the parties make the escrowed funds available for satisfaction of the Allen and Druding judgments. The Superior Court (*DiClerico*, J.) approved this recommendation, and the defendant brought this appeal.

The defendant first challenges the master's finding that *in rem* jurisdiction over the escrowed funds provided a sufficient basis for adjudicating Mr. Astles' rights. The defendant argues that personal jurisdiction over Astles was necessary and that such jurisdiction did not exist because Astles never received service of process and was not made a party defendant.

■ ■ While we agree that personal jurisdiction over Astles was a prerequisite to the adjudication of his rights, *see* F. JAMES, JR., CIVIL PROCEDURE § 9.16, at 414 (1965); *see also Mallow v. Hinde*, 12 Wheat. 193, 198 (1827), we conclude that personal jurisdiction existed in this case. We have stated that "an objection to service or notice is waived when a party, by general appearance or otherwise, submits any other question, except the sufficiency of service or notice, to the court. . . ." *Lyford v. Academy*, 97 N.H. 167, 168, 83 A.2d 302, 303 (1951) (quoting *Roberts v. Stark*, 47 N.H. 223, 225 (1866)). We have also held that jurisdictional issues will be deemed to have been waived unless they are fully litigated prior to the determination of any substantive issues. *See Morel v. Marable*, 120 N.H. 192, 193–94, 412 A.2d 747, 748 (1980); *Jewett v. Jewett*, 112 N.H. 341, 342–43, 296 A.2d 11, 12 (1972).

■ We find no reason to limit the application of the principles discussed above only to disputes involving named parties. In this case, Mr. Astles, in his individual capacity and acting through counsel, filed various pleadings with the court, including requests

for substantive findings and rulings. The record shows that the plaintiffs acquiesced to Mr. Astles' appearance. In addition, the record reveals that Mr. Astles did not fully litigate the issue of jurisdiction prior to the disposition of the substantive issues raised in his pleadings. For these reasons, we hold that Mr. Astles waived any jurisdictional objections and submitted himself to the court's jurisdiction. *Cf. Vezina v. Vezina*, 95 N.H. 297, 298, 62 A.2d 756, 757 (1948).

■ The defendant also contends that the master's decision was erroneous because the plaintiffs did not present the theory of piercing the corporate veil in their pleadings. *See Clinical Lab. Prod's Inc. v. Martina*, 121 N.H. 989, 990–91, 437 A.2d 285, 286 (1981). Although the plaintiffs' pleadings were inartfully drafted and did not specifically mention the theory of piercing the corporate veil, they referred to the "alter ego" doctrine and alleged that Mr. Astles should have been held personally liable for depleting the assets of Amesbury. We hold that the references and allegations of the pleadings were sufficient to establish a claim for piercing the corporate veil. This holding, moreover, is supported by the remarks of the attorney for Amesbury and Astles, who acknowledged, at the outset of the June 10, 1981, hearing on the merits, that the plaintiffs sought to pierce the corporate veil.

The defendant finally argues that the master's decision was erroneous because the plaintiffs failed to prove the elements necessary for a finding of fraudulent conveyance or for piercing the corporate veil.

While we have rejected the defendant's preliminary contentions, we find merit to this final argument. The record shows that the money withdrawn from the corporation by Mr. Astles, $17,982 over three years, was generated entirely by his personal activities and was not unreasonable compensation for his services. The record therefore does not support a finding of fraudulent conveyance. *See* RSA 545:5.

■■ We have held that a court may pierce the corporate veil if a shareholder suppresses the fact of incorporation, misleads his creditors as to the corporate assets, or otherwise uses the corporate entity to promote injustice or fraud. *Village Press v. Stephen Edward Co.*, 120 N.H. 469, 471–72, 416 A.2d 1373, 1375 (1980); *Ashland Lumber Co. v. Hayes*, 119 N.H. 440, 441, 402 A.2d 201, 202 (1979); *Peter R. Previte, Inc. v. McAllister Florist, Inc.*, 113 N.H. at 582, 311 A.2d at 124. Here, Mr. Astles neither suppressed the fact of incorporation nor misled the plaintiffs as to the corporate assets. Although the master correctly found that Amesbury disregarded

certain corporate formalities between 1977 and 1979, he specifically found that the corporate assets remained constant during this period. No evidence existed showing that the lack of formalities was intended to promote injustice or fraud with respect to the plaintiffs. To the contrary, the lack of formalities appears merely to have been the result of the winding up of the corporation during this period. In view of the dearth of evidence that Mr. Astles used the corporation to promote injustice or fraud, we hold that the trial court erred in piercing the corporate veil.

*Reversed.*

DOUGLAS, J., did not sit; the others concurred.