**In re CYCLE–RAMA, INC., Debtor.**

**Terrie HARMAN, Trustee, Plaintiff,**

**v.**

**Raymond BERTHOLET, Jr., Defendant.**

**Bankruptcy No. 86–00283.**
**Adv. No. 86–124.**

United States Bankruptcy Court,
D. New Hampshire.

Sept. 29, 1988.

Victor Dahar, Manchester, N.H., for defendant.

David M. Nickless, Nickless & Phillips, Fitchburg, Mass., for trustee.

Terrie Harman, Portsmouth, N.H., Trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

The plaintiff-trustee in bankruptcy in this adversary proceeding seeks a monetary judgment in the amount of $71,130.98 against the defendant Raymond Bertholet, Jr. The trustee's complaint as originally filed in 1986 requests relief on a number of different grounds but as the matter was ultimately tried before this court, after a series of pre-trial orders in this adversary proceeding, the trustee's basic contentions boil down to two grounds. These two grounds are a request that the defendant be held liable for all the corporate debts upon a piercing of the corporate veil under an "alter ego" theory of liability, and a request for recovery of certain monies received by the defendant from the debtor corporation as alleged preferences recoverable under § 547 of the Bankruptcy Code.

The defendant was the sole shareholder of Cycle–Rama, Inc. (hereinafter "CRI") at the time of its chapter 7 bankruptcy filing on June 20, 1986. The defendant had acquired that corporation in August of 1985. The defendant was also the sole stockholder of Bertholet Enterprises, Inc. (hereinafter "BEI"), which was a corporation dealing in the retail sale of motorcycles that defendant had operated since the early 1980's in Laconia, New Hampshire. BEI also filed a chapter 7 bankruptcy petition in this court on June 20, 1986. When the defendant acquired CRI in August of 1985, that corporation was engaged in a similar retail motorcycle operation in Plaistow, New Hampshire.

■ The plaintiff-trustee's basic contention on the alter ego attack, and the evidence she submitted in support thereof, relates to the loose record keeping and the transfers of assets back and forth between BEI and CRI in the eleven-month period from August of 1985 to the bankruptcy filings in June of 1986. However, the trustee of CRI has already, and separately, pursued an adversary proceeding in this case against the trustee of the BEI corporation based on the alter ego theory and other contentions relating to alleged improper transfers by CRI to BEI that she alleged had harmed the creditors of CRI.[1] The separate adversary proceeding has been resolved by a compromise and final order settling all claims between the two bankruptcy estates. Accordingly, the plaintiff-trustee in the present case cannot support an alter ego attack *against this individual defendant* simply upon grounds that might have supported such an attack against the original *corporate defendant* (i.e., BEI), but which now have been finally resolved in the separate adversary proceeding.

■ The trustee argues alternatively, however, that she can obtain alter ego relief against the present individual defendant under controlling New Hampshire law on the separate ground of the alleged under-capitalization of CRI by the defendant from the time of his taking over that corporation in August of 1985 until the bankruptcy filing in June of 1986.

Assuming without deciding that the requisite under-capitalization has been established on this record, I do not agree with the trustee's contention that New Hampshire law permits alter ego relief based upon that factor alone.[2] The New Hamp-

---

1. The present adversary proceeding originally had the trustee of BEI joined as a defendant with those additional grounds of relief asserted against that trustee and the BEI estate. Those aspects of the present adversary proceeding were severed by a pretrial order of this court entered June 5, 1987 and the severed proceedings were given the adversary proceeding number 86–124A. That adversary proceeding, i.e. ADV# 86–124A, was the subject of a joint motion for approval of compromise filed May 19, 1988, which was approved by this court's orders entered July 6, 1988 in both the BEI and CRI cases. Those orders, and the underlying compromise between the trustees have settled any and all claims between the two bankruptcy estates.

2. What is requisite capitalization in the modern credit-oriented economy depends a great deal on the nature of the industry involved and on the credit financing alternatives available. It is noted in the present record that the debtor secured a one million dollar line of credit for the CRI operation from his bank and arranged adequate floor-plan financing through various motorcycle manufacturers. The CRI operation apparently proceeded smoothly until snowmobile

shire Supreme Court has spoken quite clearly upon the standards for alter ego relief, i.e. piercing of a corporate veil to hold the individual shareholder personally liable for corporate debts. See *Ashland Lumber Co. v. Hayes*, 119 N.H. 440, 402 A.2d 201 (1979); *Village Press v. Stephen Edward Co.*, 120 N.H. 469, 416 A.2d 1373 (1980); *Druding v. Allen*, 122 N.H. 823, 451 A.2d 390 (1982).[2a]

In the *Ashland Lumber* case the Supreme Court of New Hampshire set out the reason for caution in granting alter ego relief in a decision affirming a denial of that attack upon the facts presented:

> The master's ruling is incorrect. "[O]ne of the desirable and legitimate attributes of the corporate form of doing business is the limitation of the liability of the owners to the extent of their investment." *Peter R. Previte, Inc. v. McAllister Florists, Inc.*, 113 N.H. 579, 582, 311 A.2d 121, 123 (1973). Although we have "not hesitated to disregard the fiction of the corporation as being independent of those who are associated with it as stockholders," *id.* at 581, 311 A.2d at 123, this case lacks sufficient evidence to permit piercing the corporate veil. As in the *Previte* case, there is no evidence here of fraudulent conveyance and it is "not claimed that [defendant] suppressed the fact of [his] incorporation or misled the plaintiff as to the corporate assets." *Id.* at 582, 311 A.2d at 123; cf. *Stephenson v. Stephenson*, 111 N.H. 189, 194, 278 A.2d 351, 355 (1971) (granting plaintiff-wife's bill in equity to set aside conveyance by defendant-husband's wholly owned corporation). In fact he notified the plaintiff of his incorporation. [119 N.H. at 441, 402 A.2d 201]

As noted, New Hampshire law requires some showing of suppression of the fact of corporate existence, fraud, or some misleading as to corporate assets in order to justify disregard of the corporate entity.

In the *Village Press* case, the New Hampshire court reversed the lower court judgment applying the alter ego doctrine to pierce the corporate veil and further amplified its standard for such relief as follows:

> Plaintiff argues that Blum personally controlled the corporations, making them, in effect, his *alter egos.* Plaintiff concludes therefrom that Blum is personally liable for their debts. Under the *alter ego* doctrine, however, piercing the corporate veil is not permitted solely because a corporation is a one-man operation. *Farmers Feed & Supply Co. v. United States*, 267 F.Supp. 72, 78 (N.D. Iowa 1967); *IZE Nantan Bagowa, Ltd. v. Scalia*, 118 Ariz. 439, 577 P.2d 725 (Ct.App.1978). Similarly, the fact that one person controls two corporations is not sufficient to make the two corporations and the controlling stockholder the same person under the law. *Waff Bros., Inc. v. Bank of N.C., N.A.*, 289 N.C. 198, 221 S.E.2d 273 (1976).
>
> In order to avail itself of the benefits of the *alter ego* doctrine, thereby piercing the corporate veil, the plaintiff must establish that the corporate entity was used to promote an injustice or fraud. *Quarles v. Fuqua Industries, Inc.*, 504 F.2d 1358 (10th Cir.1974); *Norman v. Del Elia*, 111 Ariz. 480, 533 P.2d 537 (1975); *Kahili, Inc. v. Yamamoto*, 54 Hawaii 267, 506 P.2d 9 (1973); *Rosebud Corp. v. Boggio*, 39 Colo.App. 84, 88, 561 P.2d 367, 371 (1977). [120 N.H. at 471, 416 A.2d 1373]

Here the New Hampshire court restated the standard somewhat in terms of requiring the plaintiff to "establish that the corporate entity was used to promote an injustice or fraud" as noted in the foregoing citation.

The court in *Village Press* did note that "other courts" have looked into whether the corporation was under-capitalized in determining an alter ego attack. 120 N.H. at 471, 416 A.2d 1373. However, there is no

---

sales during the Winter of 1986–1987 were far below normal due to unfavorable weather conditions that winter.

**2a.** It should be noted that in *Village Press,* as in the present case, the defendant was the sole stockholder of the two corporate entities involved in the alter ego contention.

indication by that reference that the New Hampshire court intended any ruling with regard to that factor since it expressly found that in the *Village Press* case there was evidence offered of the capitalization or solvency of the two corporations involved.

The New Hampshire Supreme Court in effect did pass upon the "undercapitalization-alone" contention to support alter ego relief in its decision in *Druding v. Allen,* 122 N.H. 823, 451 A.2d 390 (1982). In that case, the court reversed a trial court judgment allowing the piercing of the corporate veil where the primary contention by the plaintiff was based upon an alleged wrongful depleting of corporate assets by the president and principle shareholder of the involved corporation. The court ruled that the record did not support alter ego relief based upon the withdrawal since the compensation received by the president over three years "was generated entirely by his personal activities and was not unreasonable compensation for his services." 122 N.H. at 827, 451 A.2d 390. The court concluded by restating the applicable standard as follows:

> We have held that a court may pierce the corporate veil if a shareholder suppresses the fact of incorporation, misleads his creditors as to the corporate assets, or otherwise uses the corporate entity to promote injustice or fraud. *Village Press v. Stephen Edward Co.,* 120 N.H. 469, 471–72, 416 A.2d 1373, 1375 (1980); *Ashland Lumber Co. v. Hayes,* 119 N.H. 440, 441, 402 A.2d 201, 202 (1979); *Peter R. Previte, Inc. v. McAllister Florist, Inc.,* 113 N.H. at 582, 311 A.2d at 124. Here, Mr. Astles neither suppressed the fact of incorporation nor misled the plaintiffs as to the corporate assets. Although the master correctly found that Amesbury disregarded certain corporate formalities between 1977 and 1979, he specifically found that the corporate assets remained constant during this period. No evidence existed showing that the lack of formalities was intended to promote injustice or fraud with respect to the plaintiffs. [122 N.H. at 827–28, 451 A.2d 390]

The court had noted earlier in its opinion that the record indicated that, while the corporate assets remained constant during the period of withdrawals, "the corporation was undercapitalized in its last years." 122 N.H. at 826, 451 A.2d 390. Accordingly, although the court in *Druding v. Allen* did not expressly discuss undercapitalization-alone as a possible sufficient ground for alter ego relief, the effect of the judgment was to affirm a denial of such relief on a record in which undercapitalization *was* established. This confirms my judgment that the reading of the "undercapitalization" reference in the *Village Press* opinion is mere descriptive dicta of other court's decisions and is not a ruling as to New Hampshire law.

I therefore conclude that the plaintiff-trustee in the present matter must prove some "injustice" factor, in addition to an assumed undercapitalization, in order to justify alter ego relief under New Hampshire law. It is not surprising, in my opinion, that courts generally require such additional factors over and above undercapitalization in view of the present realities of our highly-leveraged modern economy. Corporate entities now can, and do, operate often with leased premises and leased business machinery, equipment, etcetera (i.e., equipment leases). Whether use of such leasing and financing devices is wise in a particular business at a particular time may be debatable, but a bad business judgment in that regard does not *ipso facto* constitute "injustice" for alter ego relief purposes when the judgment proves to be wrong and the business fails. The ramifications of a contrary ruling in that regard, in terms of our present corporate economy, would be quite significant and essentially not anticipated, I believe, by the parties engaged in such business transactions.

### ALTER EGO RELIEF

In the present case, the record is uncontroverted that, notwithstanding all of the transfers and dealings between the two corporations involved, the individual defendant in the present adversary proceeding did not receive one dollar as a result of

those transactions. All monies were used to pay creditors. Indeed, by the time of the bankruptcy filings, the defendant had disposed of his personal property in an attempt to salvage his business and had nothing more than his clothing as personal assets. Moreover, from August of 1985 to June of 1986, the defendant drew *no* salary from CRI and cut his prior $600 salary in BEI to $300 a week. It is also uncontroverted that the defendant never represented the Plaistow motorcycle business as anything other than a corporate operation under the CRI name.

For all of the foregoing reasons, I conclude that the trustee's complaint, to the extent it requests alter ego relief imposing judgment upon the defendant for personal liability for the corporate debts, must be denied.

### VOIDABLE TRANSFERS

The trustee also introduced evidence of a number of checks written by CRI payable to the defendant during the period from January 1986 to the bankruptcy filing in June of 1986, which she contends were preferences and/or fraudulent conveyances. As for the fraudulent conveyance contentions, the record does not establish that *this defendant* received and held any of the payments involved for his own benefit. Such payments were either reimbursement for proper corporate expenses or were "in-and-out" one-day transfers between the defendant and CRI to cover temporary cash flow shortages. As for the preference contentions, the evidence establishes that any payments made to the defendant prior to June of 1986 were not payments upon antecedent debts. The evidence does establish that a payment of $2,846.61 made by CRI to the defendant by check dated June 17, 1986, some three days prior to the bankruptcy filing, was in fact payment upon an antecedent obligation and did constitute a preference within the meaning of § 547 of the Bankruptcy Code. Accordingly, judgment will be entered for the plaintiff-trustee against the defendant in that amount.