Belknap
No. 89-365

GEORGE E. TERREN AND
YACHT CLUB VISTA CONDOMINIUM ASSOCIATION, INTERVENOR

v.

ELLA MAY BUTLER, ROBERT W. BUTLER AND
YACHT CLUB VISTA, INC.

October 4, 1991

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Robert E. Murphy, Jr.,* on the joint brief and orally), for intervenor Yacht Club Vista Condominium Association.

*James O'Neill,* of Laconia, on the joint brief, for plaintiff George Terren.

*Murphy, McLaughlin & Hemeon,* of Laconia (*Robert L. Hemeon* on the brief and orally), for the defendants.

HORTON, J.   The defendants appeal two verdicts of the Superior Court (*Dickson,* J.), the first in favor of Yacht Club Vista Condominium Association (Association) against Yacht Club Vista, Inc. (Declarant), Emma May Butler and Robert W. Butler in the amount of $319,428, plus costs, and the second in favor of George E. Terren against the Declarant and the Butlers for $1, plus costs and attorney's fees. We affirm the verdict in favor of the Association. We affirm damage and cost elements of the verdict in favor of Terren, but vacate the award of attorney's fees.

The Butlers, individual owners of the Saunders Bay Motel complex on Lake Winnipesaukee, incorporated the Declarant in November 1984. The corporate purpose was to hold the property for conversion into a condominium project. The Butlers were the sole shareholders and directors and also held the offices of president, vice-president and treasurer. Their attorney held the office of secretary. On January 11, 1985, the Butlers sold the motel complex to the

Declarant. Following the sale and financing transaction, the complex was owned by the Declarant, encumbered by a mortgage held by BankEast of Meredith for one million dollars, and a second, purchase money mortgage held by the Butlers for 1.1 million dollars. Pursuant to RSA chapter 356-B, the condominium project was registered by the Declarant with the New Hampshire Consumer Protection and Antitrust Division of the Attorney General's office, and a public offering statement was prepared.

Based in part on this offering statement, as well as other oral representations made by the Butlers, Terren purchased six condominium units in June 1985. The construction aspects of the condominium conversion were ongoing during the summer of 1985 and were substantially completed by the end of July 1985.

George Terren's complaints about the quality of the condominium conversion began almost immediately. When his letters, sent by certified mail, were not accepted by the Butlers, he hired an engineer to document the existing problems. The engineer's report raised concerns about future damage as a result of the materials and construction techniques used. After receiving no response to his complaints, Terren filed this action in January 1986 and a complaint with the consumer protection division of the attorney general's office, seeking to have the Butlers removed as heads of the Association. In response, the Butlers made oral and written assurances that the problems would be remedied and, in fact, did make some repairs.

By June 1986, the Butlers had stepped down as heads of the Association, and the Association's new president began an investigation into defects in common areas. Again, the Butlers undertook to remedy the complaints now raised by the Association and expressed their willingness to resolve future defects.

A second comprehensive inspection by the Association's civil engineer, H. Edmund Bergeron, conducted in July 1987, questioned the foundation, support and construction of the units. A supplemental appraisal resulted in a total estimated cost of repairs to the property of $319,428. On February 25, 1988, the Association filed to intervene in this action.

At the time of trial, the condominium conversion had been completed and all units sold, or otherwise alienated, except for Unit 6, with a value of $100,000, which remained unencumbered in the hands of the Declarant. The Declarant was otherwise without assets.

Following a lengthy bench trial, the court found various instances of misrepresentation by the Declarant, in its offering statement, and by the Butlers, in various communications. The court found breach

of express and implied warranties. It adopted the Association's engineer's estimate of damages as correct. Finally, it found liability in the Butlers based on their participation in the misrepresentations and due to their conduct in diverting corporate assets to their benefit when they had substantial notice of outstanding claims. The stated verdicts resulted.

The defendants appeal on three general bases. First, they attack the findings regarding breach of warranty. They assert that the express warranty deemed breached flows from RSA 356-B:41, II, which carries a one-year limitation that bars the Association from recovery. They contest the finding on implied warranty due to the court's reliance on *Lempke v. Dagenais*, 130 N.H. 782, 547 A.2d 290 (1988), which they read to apply only to new construction. Second, the defendants challenge the court's findings on individual liability of the Butlers. Lastly, the defendants claim error in the award of damages to Terren and the resulting award of attorney's fees based on the authority of RSA 356-B:65, II.

I. *The Warranty Findings*

RSA 356-B:41, II, states, in part:

"... the declarant shall warrant or guarantee, against structural defects, each of the units for one year from the date each is conveyed, and all of the common areas for one year. The one year referred to in the preceding sentence shall begin as to each of the common areas whenever the same has been completed or if later . . . at the time the first unit therein is conveyed . . . . For the purpose of this paragraph, structural defects shall be those defects in components constituting any unit or common area which reduce the stability or safety of the structure below accepted standards or restrict the normal intended use of all or part of the structure and which require repair, renovation, restoration or replacement . . . ."

The Declarant reiterated this warranty in its public offering statement, by reference in part and expressly in part. The structural defects claimed to be warranty violations were common area defects. The record contains ample evidence to allow consideration of these defects as statutory violations and to support the trial court's finding of breach.

The defendants do not quarrel with the finding of breach. They assert that the statute and their supporting promise provide a war-

ranty upon which an effective claim must be made within a one-year period. They point out that the Association, the plaintiff receiving the compensation for defects to the common areas, neither made an effective claim nor moved to intervene in this lawsuit during any conceivable one-year period.

We do not construe the one-year life of the statutory warranty to be a statute of limitations or even a time limit on the delivery of effective notice. The one-year period describes the life of the duty, that is, the period during which breach may occur. Effective notice of breach must be afforded within a reasonable time after discovery, and suit must be commenced within the time afforded by the appropriate statute of limitations. *See Austin Co. v. Vaughn Bldg. Corp.*, 643 S.W.2d 113 (Tex. 1983).

In the case before us, the defects accrued during the warranty period and notice was afforded the Declarant at various times, commencing with the early general complaints by Terren, followed by the detailed engineering reports. Association-generated notice was delayed by the delay of the Butlers in transferring control of the Association from their hands to the condominium owners. Based on the evidence presented, the trial court would not be compelled to find the notice tardy or inadequate. RSA 508:4, I, provides the appropriate statute of limitations. Here, the cause of action accrued prior to July 1, 1986, and the appropriate limitation for suit was six years. Laws 1986, 227:22, II (effective date for change of limitations period from six years to three years is July 1, 1986).

Since we find that the statutory and express warranties were properly applied and support the trial court's award of damages for breach, we do not address the asserted error in finding implied warranty based on *Lempke v. Dagenais*, 130 N.H. 782, 547 A.2d 290.

## II. *Individual Liability*

The trial court found that the Butlers were individually liable for the damages awarded. One basis for this finding of individual liability was, as characterized by the trial court, the "alter ego" doctrine. This doctrine allows plaintiffs to pierce the corporate veil to place the liability of the corporation at the feet of one or more of its principals. In this State, the corporate veil may be pierced by finding that the corporate identity has been used to promote an injustice or fraud on the plaintiffs. *Druding v. Allen*, 122 N.H. 823, 827, 451 A.2d 390, 393 (1982). New Hampshire courts do not "hesitate[] to disregard the fiction of the corporation" when circumstances would lead

640

to an inequitable result. *Ashland Lumber Co. v. Hayes*, 119 N.H. 440, 441, 402 A.2d 201, 202 (1979) (citation omitted) (quoting *Peter R. Previte, Inc. v. McAllister Florist, Inc.*, 113 N.H. 579, 581, 311 A.2d 121, 123 (1973)).

■ The doctrine of piercing the corporate veil is an equitable remedy and, therefore, "is particularly within the province of the trial court . . . ." 1 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41, at 603 (rev. perm. ed. 1990). We will sustain the judge's conclusion unless clearly unsupported by the evidence. *C & M Realty Trust v. Wiedenkeller*, 133 N.H. 470, 476, 578 A.2d 354, 358 (1990). The court below found that the "substantial depletion of corporate assets by defendants Butler after being advised that defects existed in the project provides a sufficient basis to find that defendants Butler used the corporate entity to promote an injustice and/or a fraud on the plaintiffs."

■ The evidence shows that the Butlers were the sole shareholders and sole directors and that the Butlers held the offices of president, vice-president and treasurer; that the Butlers never paid the consideration, stated as $1,500 each, for their shares and paid themselves compensation of $152,000 in 1986 and $191,585 in 1985. The evidence also shows that the Butlers sold the land, originally purchased in 1979 for $472,000, financed with a mortgage debt of $379,000, to the Declarant for $1.1 million in debt, secured by a second mortgage for the entire amount. This mortgage was paid to the Butlers out of the lots' sales, principally the later sales. In addition to the $1.1 million purchase price, the Declarant was required to assume and pay the $347,475 balance on the Butlers' mortgage which they used to finance their 1979 acquisition of the property. The Butlers received $241,609 in repayment of shareholder loans and $93,917 in stock distributions. Now the corporation's sole asset is a unit in the complex, valued at $100,000. This evidence is sufficient to sustain the trial court's finding.

■■ The trial court is also supported by the policies created by RSA chapter 356-B, specifically sections 41 and 65. These policies are intended to foster confidence in condominium conversion projects. Section 41 provides an express warranty for a minimum of one year after purchase, and section 65 creates liability for misrepresentations in the sale of condominiums. Inherent in these requirements is that the corporation will stand behind its conversion and its representations for the time reasonably required by the statutory policy.

Setting up a corporation with insufficient assets or plan for assets to meet its expected debts and obligations under the condominium statute can justify the remedy of piercing the corporate veil. *Directors Guild of Amer. v. Garrison Productions*, 733 F. Supp. 755, 762 (E.D.N.Y. 1990) (shareholder dominating corporation and "carrying on a business without substantial assets to meet its debts can justify piercing the corporate veil" (citations omitted)). Permitting Yacht Club Vista's structure, set up solely by the Butlers, to protect the Butlers while depriving the plaintiffs of relief would be to undermine the purposes of the statute. *See Publicker Industries v. Roman Ceramics*, 603 F.2d 1065, 1069 (3d. Cir. 1979) (piercing appropriate when to recognize corporation as separate entity would defeat public policy). That the corporation continued to distribute its assets at a time when several claims had been made against it by purchasers supports the actions of the trial court. These factors, and the evidence submitted, amply support the judge's decision that the Butlers should be held personally liable. Because we have concluded that the Butlers are liable under the "alter ego" theory, we need determine neither whether, or to what extent, they personally made misrepresentations, nor whether they are liable for misrepresentations in the offering statement.

III. *The Terren Verdict*

██ The record contains sufficient evidence to sustain an award of $1 in damages to the plaintiff Terren, separate and apart from the Association's award. In addition to the award of damages, Terren was awarded his attorney's fees. The trial court made this award without any supporting findings. A review of the record does not permit us to imply that any of the trial court's findings support any recognized exception to the general rule in this State that "one suffering from such a wrong cannot recover counsel fees incurred in the resistance of it . . . ." *Guay v. Association*, 87 N.H. 216, 220–21, 177 A. 409, 412–13 (1935). The *Guay* exceptions as expanded over the years, *see Harkeem v. Adams*, 117 N.H. 687, 690, 377 A.2d 617, 619 (1977), and as recently reported in *Town of Nottingham v. Bonser*, 131 N.H. 120, 132, 552 A.2d 58, 65 (1988), *cert. denied*, 490 U.S. 1109 (1989), are not present in this case. A statutory provision for attorney's fees exists under RSA 356-B:65, II. This authority for awarding attorney's fees, however, refers to the actions brought under paragraph II. These are actions brought for rescission, or its equivalent, a special civil remedy tailored for elective use by a condominium purchaser. Terren did not elect this form of relief. The statutory

authority is not applicable. The award of attorney's fees was improper.

*Verdict for the Association affirmed. Verdict for Terren affirmed in part and reversed in part.*

All concurred.