Hillsborough-southern judicial district
No. 93-485

### Reese R. and Cindy L. Gautschi

v.

### Auto Body Discount Center, Inc. and Michel R. Dube

March 28, 1995

*Roussos, Hage & Hodes, P.A.,* of Manchester (*Sara B. Shirley* on the brief and orally), for the plaintiffs.

*Winer and Bennett,* of Nashua (*Edna M. Conway* and *Charles L. Greenhalgh* on the brief), for the defendants, and *Michel R. Dube,* orally, *pro se.*

BATCHELDER, J. The defendants, Auto Body Discount Center, Inc. (ABDC) and Michel R. Dube, appeal a jury verdict in the Superior Court (*Barry,* J.), awarding general damages as well as damages under the Consumer Protection Act, RSA chapter 358-A, to the plaintiffs, Reese and Cindy Gautschi, arising from the sale of a salvaged 1986 Honda CRX automobile. They argue that the trial court should have: (1) dismissed those counts of the plaintiffs' writ based on violation of the Consumer Protection Act; (2) set aside the verdict entered against Michel Dube individually; (3) set aside the verdict due to inconsistent findings by the jury; (4) excluded photographs offered by the plaintiffs and admitted evidence offered by the defendants; and (5) denied the plaintiffs' request for a post-judgment attachment. We affirm in part and reverse in part.

In September 1987, the plaintiffs purchased the salvaged vehicle from ABDC, a business incorporated by Dube approximately one year earlier. Dube financed the purchase. Shortly thereafter, the vehicle was involved in another collision. The plaintiffs returned it to ABDC for repairs.

Over the next several years the plaintiffs made extensive improvements to the car. They modified or entirely replaced the exhaust and suspension systems, engine, and interior, and installed a sophisticated sound system. As is often the case, the vehicle did not, in the final analysis, meet the expectations of the buyers, although at one point the plaintiffs changed the wheels on the car and for a brief period seemed satisfied. When questioned as to how the car drove after the wheel change, Reese Gautschi answered, "Awesome. Great. . . . [I]t was the most amazing vehicle on the road. . . . It was starting to really drive very, very, very well. I mean, it was intense." The intensity and the awesome character of the vehicle's operability evaporated quickly.

Soon after the plaintiffs replaced the wheels and tires, the vehicle experienced excessive tire wear. In the summer of 1990, the plaintiffs took the vehicle to Scott DesRoches' Auto Body for independent examination, where DesRoches attributed the problem to unrepaired structural damage. The plaintiffs subsequently brought the car back to ABDC. Dube told them that the problem was caused by tires that were the wrong size for the car.

When ABDC refused to repair the vehicle, the plaintiffs stopped making payments on their car loan. In response, Dube repossessed the vehicle.

In March 1991, the plaintiffs sued the defendants for misrepresentation, breach of contract, and violation of the Consumer Protection Act, based on the repairs done following the 1987, post-sale accident. Prior to trial, the plaintiffs learned that the vehicle had failed inspection in June 1987. Indeed, the inspector had recommended that potential buyers "not even drive the car from the premises." Consequently, they amended their pleadings to include liability based on the vehicle's sale. The defendants responded with their own suit for breach of contract based on the plaintiffs' failure to complete timely payments on their loan. The jury by special verdict found that the defendants breached the contract to repair the vehicle properly following the 1987 accident and intentionally misrepresented that the repair was properly performed, and that both the sale and later repair of the vehicle were unfair and deceptive trade practices. Additionally, they found for the plaintiffs in the defendants' action. This appeal followed.

The defendants first argue that the trial court erred in denying their motion to dismiss the causes of action alleging violation of the Consumer Protection Act because both the sale and repair of the vehicle occurred more than two years before the date of the plaintiffs' action. *See* RSA 358-A:3, IV-a (1984). In construing the Consumer Protection Act, we may be guided by the interpretation and construction given to the Federal Trade Commission Act, 15 U.S.C. 45(a)(1) (1988), by the federal courts. *See* RSA 358-A:13 (1984).

"In determining whether a motion to dismiss should be granted, the court assumes all factual allegations to be true, and the reasonable inferences that can be drawn from those facts are construed in the plaintiff's favor." *ERG, Inc. v. Barnes,* 137 N.H. 186, 190, 624 A.2d 555, 558 (1993).

RSA 358-A:3, IV-a exempts those "[t]ransactions entered into more than 2 years prior to the complaint" from the regulation of business practices for consumer protection. The parties agree that both the sale and later repair of the vehicle in 1987 occurred more than two years before the plaintiffs filed their action in 1991. Therefore, these transactions cannot form the basis for a Consumer Protection Act violation. The plaintiffs argue, however, that Dube's 1990 representation that improper tire size was the source of their problems occurred less than two years before their suit and warrants application of the Consumer Protection Act. Consequently, we must determine whether Dube's representation is the type of unfair act or practice that the Consumer Protection Act was enacted to protect against.

RSA 358-A:2 (1984 & Supp. 1994) lists a number of acts meeting the definition of an "unfair method of competition or unfair or deceptive act or practice," but none apply here. Our inquiry does not end with

this list, however, because the statute itself states that it is not limited to the listed transactions. *See Roberts v. General Motors Corp.,* 138 N.H. 532, 538, 643 A.2d 956, 960 (1994).

The Federal Trade Commission determines consumer unfairness through an examination of

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise— whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45 n.5 (1972) (quotation omitted). These criteria do not proscribe the representation here.

> Perhaps the most common application of the unfairness doctrine involves the withholding of material information. A consumer ordinarily protects himself by choosing among alternative products. For his decision to be meaningful, however, it must be based on full and accurate knowledge of the alternatives. Some sellers have undermined this process by either withholding or failing to generate critical data about their products, thus making it difficult or impossible for consumers to make informed comparisons.

Averitt, *The Meaning of "Unfair Acts or Practices" in Section 5 of the Federal Trade Commission Act,* 70 GEO. L.J. 225, 257–58 (1981). Here, Dube's representation was separate and distinct from any consumer transaction and did not induce the type of misinformed decision the Consumer Protection Act addresses. *See, e.g., Purity Supreme, Inc. v. Attorney General,* 407 N.E.2d 297, 306–07 (Mass. 1980).

 We see no reason on these facts to expand the definition of an unfair or deceptive act or practice to encompass representations made long after the true deceptive act or practice itself occurred. The plaintiffs' writ clearly establishes that the wrongful conduct at issue occurred either at the time of sale or at the time of the 1987 repair of the vehicle; no other wrongful acts relating to the car's condition are alleged. Although RSA 358-A:3, IV-a permits "the introduction of evidence of unfair trade practices and deceptive acts prior to the 2 year period in any action under this chapter," it does not purport to transform later representations into violations of the Consumer Protection Act. "[E]vidence of acts occurring more than two years prior

to the date of the Complaint can be introduced *only* if the plaintiff can first avoid the statutory exemption; it can only be introduced as evidence of a pattern of conduct in a suit properly brought under the Act." *City of Manchester v. National Gypsum Co.,* 637 F. Supp. 646, 656 (D.R.I. 1986) (applying New Hampshire law).

■ The plaintiffs contend that RSA chapter 358-F salvages their assertion of a Consumer Protection Act violation. That chapter imposes a duty on the seller of an unsafe used vehicle to notify the customer in writing of any defects, RSA 358-F:2 (1984), and makes the failure to do so "an unfair or deceptive act or practice *within the meaning of RSA 358-A:2,*" RSA 358-F:4 (1984) (emphasis added). Because this statute was enacted in 1977, *see* Laws 1977, 541:1, seven years after the Consumer Protection Act was adopted, *see* Laws 1970, 19:1, we presume that the legislature was aware of the two-year exemption in RSA chapter 358-A. *Barksdale v. Town of Epsom,* 136 N.H. 511, 516, 618 A.2d 814, 817 (1992). Consequently, its repetition in RSA chapter 358-F would have been unnecessary, and its application to RSA 358-F:4 may be implied.

The pleadings do not make out a case that the plaintiffs were entitled to relief based on a violation of the Consumer Protection Act. These counts should have been dismissed. Accordingly, we reverse that portion of the jury award based on the Consumer Protection Act violations.

■ The defendants next argue that the trial court erred in denying their motion to set aside the verdict against Michel Dube individually. A jury verdict may be set aside if it is conclusively against the weight of the evidence or the result of mistake, partiality, or corruption. *Broderick v. Watts,* 136 N.H. 153, 162, 614 A.2d 600, 606 (1992). In this case no mistake, partiality or corruption is argued; therefore, we examine the evidence to determine whether "the verdict was one no reasonable jury could return." *Id.* (quotation omitted).

■ The defendants maintain that the jury verdict form did not permit the jury to distinguish between ABDC and Dube. Because the record does not reveal that the defendants objected to the jury verdict form at trial, we will not consider it here. *See Gosselin v. Gosselin,* 136 N.H. 350, 352, 616 A.2d 1287, 1288 (1992).

The jury's finding of liability against Dube individually was, the defendants contend, against the weight of the evidence. Dube testified at trial that ABDC was incorporated in approximately 1986 and that he and his wife were corporate officers. The plaintiffs' certificate of title lists ABDC, Inc. as the vehicle's seller. Dube also testified that one of ABDC's employees, rather than Dube himself, repaired the vehicle after the 1987 accident.

■ "Certainly one of the desirable and legitimate attributes of the corporate form of doing business is the limitation of the liability of the owners to the extent of their investment." *Peter R. Previte, Inc. v. McAllister Florist, Inc.,* 113 N.H. 579, 582, 311 A.2d 121, 123 (1973). We will pierce the corporate veil and assess individual liability, however, where the corporate identity has been used to promote an injustice or fraud, *Terren v. Butler,* 134 N.H. 635, 639, 597 A.2d 69, 72 (1991), where a defendant has suppressed the fact of incorporation, *see Previte,* 113 N.H. at 582, 311 A.2d at 124, and where an individual expressly agrees to personal liability for a corporation's debts, *see Ashland Lumber Co. v. Hayes,* 119 N.H. 440, 441, 402 A.2d 201, 202 (1979).

■ Although we have "not hesitated to disregard the fiction of the corporation as a being independent of those who are associated with it as stockholders," *Previte,* 113 N.H. at 581, 311 A.2d at 123, the record here is devoid of any evidence to permit piercing the corporate veil. Because no reasonable jury could return a verdict against Dube individually, we reverse the finding of personal liability. *See Broderick,* 136 N.H. at 162, 614 A.2d at 606.

The defendants' remaining arguments merit little discussion. First, although they assert that the jury's findings were inconsistent, a review of the transcript, particularly regarding the 1987 repair of the vehicle, reveals that the jury's findings were neither a product of mistake, partiality, or corruption, nor conclusively against the weight of the evidence. The record amply supports the jury's finding of liability. *See id.* Next, we find no abuse of discretion in the trial court's evidentiary rulings. *See Clipper Affiliates v. Checovich,* 138 N.H. 271, 275, 638 A.2d 791, 794 (1994). Finally, we address the defendants' contention that no statute authorizes "post-judgment" attachment. The defendants misconceive the basic difference between a verdict and a judgment. Although the jury rendered its verdict in March 1993, because the defendants timely appealed to this court, no final judgment has yet been entered for the plaintiffs. *See Rollins v. Rollins,* 122 N.H. 6, 9, 440 A.2d 438, 440 (1982); SUPER. CT. R. 74. The attachment at issue resulted from the granting of a motion to enlarge the attachment granted prior to the trial. It was specifically authorized under RSA 511-A:7 (1983).

*Affirmed in part; reversed in part.*

All concurred.