Sheppard v. River Valley, et al.      CV-00-111-M    11/18/02
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


<u>Mary Chris Sheppard</u>
<u>and Robert Sheppard</u>,
      Plaintiffs

      v.                                    Civil No. 00-111-M
                                            Opinion No. 2002 DNH 205
<u>River Valley Fitness One, L.P.</u>
<u>d/b/a River Valley Club; River</u>
<u>Valley Fitness GP, L.L.C.; River</u>
<u>Valley Fitness Associates, Inc.;</u>
<u>Joseph Asch; and Elizabeth Asch</u>,
      Defendants


                         **O R D E R**


      This case currently consists of two Title VII claims brought

by M.C. Sheppard against the three corporate defendants, two

state-law claims brought by the Sheppards against the Asches

individually, and a five-count counterclaim filed by River Valley

Fitness One. L.P. against Ms. Sheppard.  Before the court are

plaintiffs': (1) Motion for Relief from Stay (document no. 172);

(2) Motion to Amend to Add the Bankruptcy Trustee, Victor Dahar,

as a Necessary Party Pursuant to F.R.C.P. 19 (document no. 171);

and (3) Motion to Pursue Piercing the Corporate Veil as Equitable

Remedy or, in the Alternative, Motion to Amend Complaint Pursuant

to F.R.C.P. 15 (document no. 173).  Defendants object.

In an order dated June 14, 2002 (document no. 183), the court directed the parties to brief four issues raised by plaintiffs' various requests for relief.  Having carefully considered the parties' briefs, and for the reasons given below, plaintiffs' motions are denied.

Because it is apparent that resolution of the corporate veil-piercing issue will also resolve most, if not all, of plaintiffs' requests for relief, the court begins with that issue.

According to the treatise on which plaintiffs rely in framing their veil-piercing argument:

> The alter ego doctrine has been adopted by the courts in cases where the corporate entity has been used as a subterfuge and to observe it would work an injustice.  The rationale behind the theory is that, if the shareholders or the corporations themselves disregard the proper formalities of a corporation, the law will do likewise as necessary to protect individual and corporate creditors.  The rule is designed to give incentives to those using the corporate form to obey the state's laws fully by maintaining the formalities and the legal separateness of the corporation.
>
> . . . .

2

> One who seeks to disregard the corporate veil must show that the corporate form has been abused to the injury of a third person.
>
> . . . .
>
> Courts will disregard the existence of a corporate entity when the plaintiff shows: (1) control, not merely majority or complete stock control, but complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and (2) such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other positive legal duty, or dishonest and unjust act in contravention of the plaintiff's legal rights; and (3) the aforesaid control and breach of duty must proximately cause the injury or unjust loss.

1 W.M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.10 (1999) (emphasis added, footnotes omitted).

Plaintiffs have failed to allege any acts by the individual defendants, the Asches, that constitute abuse of the corporate form.[1]  Even if, as plaintiffs allege, Mr. Asch did falsely

---

[1] In response to the question posed by the court in its order of June 14, 2002, "[w]hether and how any shareholder of the GP entities allegedly abused the corporate [form] in a manner that warrants veil piercing," plaintiffs cite four cases that employ an alter-ego theory.  See Canabal v. Aramark Corp., 48 F. Supp. 2d 94 (D.P.R. 1999); Santiago v. Lloyd, 33 F. Supp. 2d 99 (D.P.R. 1998); Martin v. Safeguard Scientifics, Inc., 17 F. Supp. 2d 357 (E.D. Pa. 1998); Curcio v. Chinn Enters., Inc., 887 F.

3

represent himself as the general partner of the limited partnership, and even if plaintiff M.C. Sheppard submitted to harassment by Mr. Asch because she thought he was the general partner, Mr. Asch's false statement was, at most, a misrepresentation that was wrongful as to M.C. Sheppard. Although Mr. Asch's statement was false, a false statement about the limited partnership, by a person who was all but a legal stranger to both the limited partnership and its successive general partners, does not qualify as an abuse of the corporate form of either River Valley Fitness Associates, Inc. or River Valley Fitness GP, L.L.C. And abuse of the corporate form is what plaintiffs would have to show, initially, to pierce the corporate veils of those entities.

Furthermore, while plaintiffs characterize Mr. Asch's alleged misrepresentation of his general partner status as an act intended to hide the existence of the corporate form of the

_____

Supp. 190 (N.D. Ill. 1995). However, none of those cases involved corporate veil-piercing. Rather, each employed an alter-ego theory to bring an individual within the definition of "employer" for Title VII purposes, which is, of course, an entirely different issue than the one raised here. Here, as decided in court's orders of October 16, 2001, and January 24, 2002, the Asches are not Title VII defendants.

actual GP entities, that falsehood, even if proven, is hardly the type of conduct that veil piercing is intended to remedy. Suppression of the corporate form can prompt a court equitably to pierce the corporate veil when a creditor is lead to believe that he or she is doing business with an individual with sufficient assets to meet contractual obligations, only to discover later that his or her remedies for breach of contract lie against a hidden corporate entity with insufficient assets to meet those obligations. M.C. Sheppard is not a creditor who has been defrauded by the deception of an individual seeking to hide behind the existence of a previously undisclosed corporate entity. There is no basis for piercing the corporate veil here, even if Mr. Asch did misrepresent himself as being the general partner of the limited partnership.[2]

---

[2] With respect to plaintiff's argument that the Asches suppressed the existence of the corporate form, plaintiffs' reliance upon Bartholomew v. Delahaye Group, Inc., Civ. No. 95-20-B, 1995 WL 907897 (D.H.H. Nov. 8, 1995) is misplaced. In that case, plaintiff alleged that the shareholder whose assets she sought to tap "did not observe corporate formalities in making major corporate decisions" and "commingled her assets with [the corporation's] assets, paying for personal assets with [the corporation's] money and vice-versa." Id. at *11. Here, by contrast, there is no allegation of either corporate looting or commingling, but only an allegation of undercapitalization, which was discussed at length and resolved in the court's order of January 24, 2002.

The court further notes, in passing, that while the New

5

Moreover, this case does not present a situation in which equity demands that the corporate veil be pierced. M.C. Sheppard was employed by the limited partnership (not the Asches). Therefore, the limited partnership is her employer for Title VII purposes. It may well be that the limited partnership and its successive general partners constitute a "single employer" for Title VII purposes, but, the limited partnership's decision to seek bankruptcy protection, even coupled with the GP entities'

_____

Hampshire Supreme Court has "held that a court may pierce the corporate veil if a shareholder suppresses the fact of incorporation . . ." Druding v. Allen, 122 N.H. 823, 827 (1982) (citing Village Press v. Stephen Edward Co., 120 N.H. 469, 471-72 (1980); Ashland Lumber Co. v. Hayes, 119 N.H. 440, 441 (1979); Peter R. Previte, Inc. v. McAllister Florist, Inc., 113 N.H. 579, 582 (1973)), there appears to be no New Hampshire Supreme Court case in which a corporate veil has been pierced because a shareholder suppressed the fact of incorporation.

Indeed, the rule on which plaintiffs rely appears to have entered New Hampshire law via the following quotation: "The shareholder . . . will be liable for corporate obligations when it suppresses the fact of incorporation, . . . or when it creates a false appearance which causes a reasonable creditor to misapprehend the worth of the corporate obligor." Peter R. Previte, 113 N.H. at 581-82 (quoting 28 Ohio St. L.J. 441, 468 (1967) (alterations in the original).

It seems reasonably clear, then, that the purpose behind the equitable rule plaintiffs invoke is to protect creditors who reasonably rely upon representations made by those with whom they transact business. M.C. Sheppard, however, was not a creditor of either the Asches or the GP entities; she is a Title VII claimant. And, if she allowed Mr. Asch to subject her to sexual harassment "in reliance" upon his status misrepresentation, which is what she seems to claim, her reliance was unreasonable.

6

lack of assets, does not render it "inequitable" for the shareholders of the GP entities to remain insulated from liability for corporate obligations.  Absent an abuse of the corporate form, shareholders are not liable for corporate debts or obligations.

While it certainly is unfortunate for plaintiffs that they do not have an accountable defendant they can pursue in this court, still, unless the corporate forms of the GP entities have been abused to plaintiffs' detriment, their misfortune does not rise to the level of unfairness.  Ironically, although they claim the Asches abused the corporate form, plaintiffs do not allege any looting or personal use of corporate assets, but, rather, argue that the corporate form should be disregarded because the Asches put money into the business, and failed to take a salary from the GP entities.

To summarize, plaintiffs' Motion to Pursue Piercing the Corporate Veil as Equitable Remedy or, in the Alternative, Motion to Amend Complaint Pursuant to F.R.C.P. 15 (document no. 173) is denied on grounds of futility.  See Foman v. Davis, 371 U.S. 178,

7

182 (1962) (futility is ground for denying motion to amend). Even if all of plaintiffs' factual allegations are true, their Third Amended Complaint (Revised) "could not withstand a Fed.R.Civ.P. 12(b)(6) motion" relative to piercing the corporate veil.[3]  Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1041 (6th Cir. 1991) (citation omitted).

Because plaintiffs are not entitled to go forward on their attempt to pierce the corporate veil, their Motion to Amend to

---

[3] Even if plaintiffs were entitled to pursue veil-piercing, they would only be entitled to do so under the theory that the GP entities are liable to them, along with the limited partnership itself, as a single employer.  In other words, strictly speaking, the GP entities would only owe plaintiffs the duty to pay a judgment against the limited partnership in the event the limited partnership's assets proved insufficient to do so.  In arguing to the contrary, plaintiffs conflate two different concepts: (1) a partner's individual liability for the debts of a partnership; and (2) personal liability for the acts of the partnership. Plaintiffs legitimately point to 59A Am. Jur. 2d Partnership § 1320 (1987) for the broad proposition that a general partner of a limited partnership "may become individually liable for all debts of the partnership."  Such liability is, of course, based upon duties owed by the general partner to the partnership.  But the general partner's financial liability for the debts of the partnership does not expose the general partner to suit as a stand-in for the partnership itself.  General partner liability can only be premised upon a duty owed by the limited partnership to a third party with a claim against the partnership.  In short, there is no legal basis for transforming the financial duty owed by the GP entities to the limited partnership into a tort (or other) duty extending from the GP entities to employees of the general partnership.

Add the Bankruptcy Trustee, Victor Dahar, as a Necessary Party Pursuant to F.R.C.P. 19 (document no. 171) is moot. Finally, because plaintiffs have advanced no valid theory under which they could pierce the corporate veils of the GP entities, they have failed to meet the condition set forth in the bankruptcy judge's order of February 26, 2002. Thus, by operation of that order, the bankruptcy stay remains in effect as to the GP entities. As a consequence, plaintiffs' Motion for Relief from Stay (document no. 172) is denied.

Based upon the foregoing, the only aspects of this case remaining on track for trial are the state-law claims asserted in plaintiffs' Second Amended Complaint. In all candor, however, the legal viability of those claims is suspect. While plaintiffs' state-law claim of tortious interference with prospective contractual relations did survive a motion for summary judgment, that motion was substantially in the nature of a motion to dismiss for failure to state a claim. Whether that claim would survive a merits-based motion for summary judgment, or a trial motion for judgment as a matter of law, remains to be seen.

**SO ORDERED.**

 

_____
Steven J. McAuliffe
United States District Judge

November 18, 2002

cc:   Lauren S. Irwin, Esq.
      William E. Whittington, IV, Esq.
      Joseph F. Daschbach, Esq.