Bartholomew v. Delahaye          CV-95-20-B      11/08/95

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Irene Bartholomew

     v.                                    Civil No. 95-20-B

Delahaye Group, Inc.,
Katherine D. Paine, and
James Hasl


                          **O R D E R**


Defendants Delahaye Group, Inc., Katherine D. Paine, and James Hasl move to dismiss plaintiff Irene Bartholomew's Complaint claiming that defendants maintained a hostile work environment, discharged her in retaliation for complaining about the work environment and to avoid paying her commissions, assaulted her, falsely imprisoned her, and intentionally inflicted emotional distress on her, wrongfully discharged her, breached her employment contract by failing to pay her the commissions and violated the New Hampshire Consumer Protection Act.  Plaintiff also claims that I should pierce the corporate veil to hold defendant Paine liable for any judgement rendered against Delahaye Group, Inc.  For the reasons stated below, defendants' motion to dismiss is granted regarding plaintiff's Consumer Protection Act claim and granted in part and denied in part regarding plaintiffs' hostile work environment, retaliatory discharge, "piercing the corporate veil," intentional tort, wrongful discharge, and breach of contract claims.

## I. BACKGROUND

Plaintiff alleges the following facts:

Plaintiff began working for defendant Delahaye Group, Inc. ["Delahaye"], of which defendant Paine was the sole officer and shareholder, on July 10, 1992. Delahaye performs marketing and advertising analysis. Most of Delahaye's clients are high-tech computer companies. Plaintiff was hired to use her expertise in computer technology to translate clients' difficult technical language for Delahaye's account executives so that Delahaye could serve its clients more effectively. Delahaye agreed to pay plaintiff a salary of $35,000 per year plus commissions on all the new business she generated.

Plaintiff was specifically assigned to cater to Intel Corporation, one of Delahaye's major new clients. She was very successful. When plaintiff began working for Delahaye, Intel did approximately $80,000 to $100,000 worth of business with Delahaye. By December 8, 1993, when plaintiff was terminated, Intel was doing approximately $400,000 worth of business with Delahaye. Earlier that year, following an internal reorganization at Delahaye, Intel demanded that Delahaye place plaintiff in charge of its account.

Despite her success, plaintiff found it difficult to work at Delahaye. Her co-workers used vulgar language, fondled each other's necks, shoulders and earlobes, addressed each other by sexually charged nicknames, and frequently interrupted plaintiff's business conversations to hug or kiss or tell sexual

jokes or to graphically describe various sexual acts. They also intertwined their legs and arms during staff conferences. To convene office meetings, Delahaye's vice president of production would announce "All you penis-breaths and bimbos get in here! We have a meeting!" over the public address system.

Plaintiff found this behavior ubiquitous and inescapable. She complained repeatedly to defendant Paine, Delahaye's president, and to other superiors, to no avail. She also complained to James Varn, an independent consultant who Paine hired to handle Delahaye's personnel problems. Paine simply told plaintiff that she, not Delahaye, had to change, and did nothing to solve the problem.

Defendants Delahaye and Paine punished plaintiff for complaining about the work environment at Delahaye by criticizing her interpersonal skills in her six-month employee evaluation. Although plaintiff's productivity and technical skill were outstanding, the evaluation stated that plaintiff had difficulty with "teamwork" and was "abrasive." Subsequently, plaintiff was branded a "troublemaker" and told that she "didn't fit in" at Delahaye.

Defendant Hasl was hired on December 1, 1993. One of his duties was to get rid of plaintiff. Delahaye announced that Hasl would increase productivity by evaluating each employee's work and recommending ways to eliminate waste. Without conducting any such evaluation of plaintiff or any other employee, acting on behalf of defendants Paine and Delahaye, Hasl fired plaintiff on

December 8, 1993, to punish her for complaining of the work environment at Delahaye and to deprive her of commissions which she had earned.  As plaintiff cleaned out her desk, Hasl attempted to bully plaintiff into signing a document entitled "Terms of Termination" which significantly altered the terms of plaintiff's termination in Delahaye's favor.  Hasl hovered menacingly over plaintiff and told her that she "was not leaving the building until she signed the memorandum."  He physically blocked her egress from her work area.  Finally, Hasl agreed to let plaintiff leave if she signed a document stating only that she had read the "Terms of Termination" memorandum.  He then escorted her all the way to her car.  This incident distressed and humiliated plaintiff.

Just before her termination, plaintiff had procured a substantial new contract from Intel Corporation for Delahaye for which Delahaye owed her a commission.  Delahaye also owed plaintiff commissions for procuring a number of smaller contracts.  Delahaye terminated plaintiff in part to avoid paying her these commissions, and continues to refuse to pay her these commissions.

Plaintiff filed a complaint on January 13, 1995, claiming that:

1)  Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. (West 1994), by maintaining and/or condoning a hostile work environment (Count I);

2)  Defendants violated New Hampshire's Law Against Discrimination, N.H. Rev. Stat. Ann. § 354-A:1 (1984) and New Hampshire's Equal Pay Act, N.H. Rev. Stat. Ann. § 275:37

-4-

(1984) (Count II);

3) Via defendant Hasl, defendants assaulted, falsely imprisoned, and intentionally inflicted emotional distress on plaintiff (Counts III-V);

4) Defendants wrongfully terminated plaintiff (Count VI);

5) Defendant Delahaye Group, Inc. breached its employment contract with plaintiff (Count VII);

6) Defendants violated New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A (1984) (Count VIII); and

7) Defendant Paine should be liable for any judgement rendered against defendant Delahaye Group, Inc. (Count IX).

## II. STANDARD OF REVIEW

When considering a motion to dismiss a complaint, I accept the well-pleaded factual allegations in the complaint as true and then determine whether the allegations are sufficient, under any theory, to state a claim for the relief sought. Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 12 (1st Cir. 1994). Neither bald assertions nor legal conclusions enjoy the presumption of truth. United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). I will, however, draw all reasonable inferences in plaintiff's favor. Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994). I must not consider facts not alleged in the complaint unless I decide to treat the motion to dismiss as a motion for summary judgment. Fed. R. Civ. P. 12(b)(6). Cooperativa de Ahorro Y Credito Aguada v. Kidder, Peabody Co., 993 F.2d 269, 272-73 (1st Cir. 1993), cert. denied, 115 S.Ct. 1792 (1995).

## III. DISCUSSION

### A. Count I: Sexual Harassment and Retaliatory Discharge

#### 1. Sexual Harassment

Plaintiff alleges that defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII") by participating in and condoning a hostile work environment. In Meritor Savings Bank, F.S.B. v. Vinson, 477 U.S. 57 (1986), the United States Supreme Court stated, "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." Id. at 66; see also Harris v. Forklift Sys., 114 S.Ct. 367, 370 (1993). Defendants argue that the conduct plaintiff endured while employed at Delahaye was not discrimination based upon sex for four reasons. First, defendants argue that they did not discriminate against plaintiff, but instead, her "sensibilities were offended" by the vulgar, but "gender-neutral" behavior at Delahaye. Second, defendants imply that because men also were exposed to the conduct of which plaintiff complains, if it was sexual harassment, it was non-discriminatory. Third, defendants argue that they did not discriminate against plaintiff because the conduct of which she complains was not specifically directed at her. Fourth, defendants argue that they committed no actionable discrimination because most of plaintiff's supervisors and co-workers were women, and women engaged in the allegedly offensive conduct.

First, defendants argue that plaintiff has confused gender-neutral vulgarity with sexual harassment. Assuming plaintiff's allegations to be true and drawing all reasonable inferences in her favor, I disagree. Plaintiff alleges, among other things, that her co-workers frequently embraced and caressed each other and interrupted work to tell each other sexually explicit stories. It is reasonable to infer that at least some of this conduct was directed to women on the basis of their sex. More importantly, plaintiff specifically alleges that Delahaye's vice-president of production typically convened office meetings by announcing over the office P.A. system, "All you penis-breaths and bimbos get in here!" Defendants fail to explain how terms like "penis-breath" and "bimbo" could possibly be gender-neutral.

Second, defendants imply that the conduct endured by plaintiff was not discrimination because, if it was sexual harassment, men and women alike were exposed to it.[1] In other words, defendants argue that conduct which discriminates against

_____

[1] Defendants do not state clearly exactly what their argument is. If defendants are instead arguing that men and women were equally sexually harassed at Delahaye, and therefore the sexual harassment of plaintiff was non-discriminatory, plaintiff's allegations, read in the light most favorable to her, do not support them. Therefore I need not answer the question of whether equal opportunity sexual harassment constitutes discrimination under Title VII. Compare Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463-64 (9th Cir. 1994), cert. den. 115 S.Ct. 733 (1995), with Rabidue v. Osceola Ref. Co., Div. of Texas-American Petrochemicals 805 F.2d 611, 620 (6th Cir. 1986) (citing Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)), cert. denied, 481 U.S. 1041 (1987), criticized by Ellison v. Brady 924 F.2d 872 (9th Cir. Cal. 1991) and disapproved by Harris v. Forklift Sys., 114 S. Ct. 367 (1993).

women due to their gender is non-discriminatory if observed by men.  I reject this argument.  Sexual harassment of women is gender discrimination, no matter whether men happen to be exposed to it.  See Hutchison v. Amateur Electronic Supply, 42 F.3d 1037, 1043 (7th Cir. 1994) (fact that discrimination against women was egregious enough to offend men as well did not cure discrimination).

Third, defendants argue that plaintiff has failed to allege discrimination because she has not alleged that the offensive conduct was directed at her.  This argument is factually and legally incorrect.  First, as stated above, plaintiff alleges that an officer of Delahaye called her "penis-breath" and "bimbo" to summon her and other employees to office meetings, and that other employees frequently interrupted her business conversations to tell sexually explicit stories.  Second, defendant's argument would require me to ignore the Supreme Court's choice of the word "environment" in describing this cause of action.  See Meritor, 477 U.S. at 66.  "Environment" implies that in determining whether defendants discriminated against plaintiff, I must consider her entire employment situation, including derogatory conduct towards women but not aimed specifically at plaintiff.  See Lipsett v. University of Puerto Rico, 864 F.2d 881, 905 (1st Cir. 1988); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415, (10th Cir. 1987); Vinson v. Taylor, 753 F.2d 141, 146 (D.C. Cir. 1985), aff'd 477 U.S. 57 (1986), ("[e]ven a woman who was never herself the object of harassment might have a Title VII claim if she were

-8-

forced to work in an atmosphere in which such harassment was pervasive").

Fourth, defendants argue that there was no discrimination against plaintiff in violation of Title VII because (1) plaintiff's supervisors and co-workers were predominantly women, and (2) women as well as men participated in or condoned the conduct of which plaintiff complains. The first argument rests on facts not alleged by plaintiff in her complaint. Because I decline to treat this as a motion for summary judgment, I may not consider the facts presented by defendants. Fed. R. Civ. P. 12(b)(6). Cooperativa de Ahorro Y Credito, 993 F.2d at 272-73. Even if I could consider it, the mere fact that plaintiff's supervisors and co-workers were predominantly women would be only marginally relevant to my determination of whether plaintiff endured a hostile work environment. Defendants' second argument is also erroneous. That some women participate in or condone sexual harassment does not shield that conduct from the sanctions of Title VII. See, e.g., E.E.O.C. v. Hacienda Hotel, 881 F.2d 1504, 1507, 1515 (9th Cir. 1989)l (Title VII violated where female supervisor laughed at male supervisor's sexual harassment of female maid and called maid "slut," "dog," and "whore"). Furthermore, to be prohibited by Title VII, conduct "need not take the form of sexual advances or of other incidents with clearly sexual overtones." Lipsett, 864 F.2d at 905, quoting McKinney v. Dole, 765 F.2d 1129, 1138-39. In Lipsett, male surgeons' constant statements to female residents that women are

incapable of being surgeons, though not explicitly sexual, were "nonetheless charged with anti-female animus, and therefore could be found to have significantly contributed to the hostile environment." Id. Defendants have failed to demonstrate why men, but not women, violate Title VII when they subject other women to conduct which is "charged with anti-female animus."

## 2. Retaliatory Discharge

Defendants treat plaintiff's sexual harassment and retaliatory discharge claims as the same claim. This is incorrect. A plaintiff who fails to state a claim of sexual harassment may nevertheless succeed in stating a claim of retaliatory discharge. See, e.g., Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994); Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33-34 (1st Cir. 1990). 42 U.S.C. § 2000e-3(a) states, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against [an employee] . . . because [that employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

To state a claim under the "opposition" clause of this section, plaintiff need only allege facts showing that she reasonably believed she was subject to sexual harassment. Wyatt, 35 F.3d at 15. To state a claim under the "participation" clause, plaintiff need not even allege facts showing that she reasonably believed she suffered sexual harassment. Id. To state a claim under either clause, plaintiff must allege that

-10-

"'(1) [she] engaged in a protected activity as an employee, (2) [she] was subsequently discharged . . . and (3) there was a causal connection between the protected activity and the discharge.'"  Id., quoting Hoeppner v. Crotched Mountain Rehabilitation Ctr., 31 F.3d 9, 14 (1st Cir. 1994).  Reading plaintiff's complaint in the light most favorable to her, I find that she has successfully stated a claim for retaliatory discharge.

### 3.    Individual Liability of Defendants Paine and Hasl

Defendants Paine and Hasl argue that even if plaintiff has plead facts sufficient to state hostile environment and unlawful retaliation claims, only defendant Delahaye, plaintiff's employer, is liable under Title VII.

It is true that Title VII applies only to "employers," but 42 U.S.C. § 2000e(b) states:

> The term `employer' means a person engaged in industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . .  (Emphasis added.)

"Agent" has been judicially defined as one who "serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." Lamirande v. Resolution Trust Corp., 834 F.Supp. 526, 529 (D.N.H. 1993), quoting Paroline v. Unisys Corp., 879 F.2d 100, 104 (4th Cir. 1989).

There is significant disagreement in this circuit concerning whether 42 U.S.C. § 2000e(b) makes supervisors liable as

-11-

individuals or whether the "any agent" language was merely Congress' way of reminding the courts of the doctrine of respondeat superior. Compare Lamirande v. Resolution Trust Corp., 834 F.Supp. 526, 529 (D.N.H. 1993) with Hernandez v. Miranda Velez, 1994 WL 394855, *6 (D.P.R. 1994); cf. Carparts Distribution Ctr. v. Automotive Wholesalers Ass'n 37 F.3d 12, 17-18 (1st Cir. 1994) (corporation administering employee's health insurance plan potentially liable under the ADA because it is an agent of employer).

The Sixth Circuit Court of Appeals indicated briefly in dicta that agents may be individually liable, see Jones v. Continental Corp., 789 F.2d 1225 (6th Cir. 1986), the Third Circuit has not addressed the issue, and the Fourth and Tenth Circuits are ambivalent, compare Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994), cert. denied, 115 S. Ct. 666 (1994), with Paroline v. Unisys Corp., 879 F.2d 100, 104 (4th Cir. 1989), see Ball v. Renner, 54 F.3d 664, 665-68 (10th Cir. 1995). The courts of appeal for every other circuit have explicitly held that the "any agent" language of 42 U.S.C. § 2000e(b) was merely Congress' way of reminding courts of the doctrine of respondeat superior, and does not make supervisors liable as individuals. See Miller v. Maxwell's Int'l, 991 F.2d 583, 587-88 (9th Cir. 1993), cert. denied, Miller v. La Rosa, 114 S.Ct. 1049 (1994); Tomka v. Seiler Corp., 1995 WL 57112, *16 (2d Cir. 1995); Grant v. Lone Star Co., 21 F.3d 649, 652-53 (5th Cir. 1994), cert. denied, 115 S. Ct. 574 (1994); United States EEOC v.

AIC Sec. Investigations, 55 F.3d 1276, 1282 (7th Cir. 1995); Lenhardt v. Basic Inst. of Technology, 55 F.3d 377, 381 (8th Cir. 1995)(no individual liability created by similar language in state statute); Smith v. Lomax, 45 F.3d 402, 403 n.4 (11th Cir. 1995), citing Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991); Gary v. Long, 59 F.3d 1391, 1399 (D.C.Cir. 1995).  In this instance, I am persuaded that the majority rule is correct.  Accordingly, these claims are dismissed.

**B.    Count II:  New Hampshire's Law Against Discrimination and New Hampshire's Equal Pay Act**

**1.    New Hampshire's Law Against Discrimination**

Plaintiff also alleges that defendant violated New Hampshire's Law Against Discrimination, N.H. Rev. Stat. Ann. § 354-A:1 (1984).  That statute states, in pertinent part:

> It shall be an unlawful discriminatory practice . . . [f]or an employer, because of the age, sex, race, color, marital status, physical or mental disability, religious creed, or national origin of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms conditions, or privileges of employment, unless based upon a bona fide occupational qualification.

Id. at § 354-A:7(I).

No New Hampshire cases interpreting § 354-A address the issues presented by this case.  I may, however, rely on federal case law interpreting Title VII to interpret § 354-A.  See, e.g., Burns v. Gorham, 122 N.H. 401, 406 (1982); Scarborough v. Arnold, 117 N.H. 803, 807 (1977); Planchet v. New Hampshire Hosp., 115 N.H. 361, 362 (1975).  Section 354-A itself states that "`unlawful discriminatory practice' includes . . . [p]ractices

prohibited by the federal Civil Rights Act of 1964 . . . ."  N.H. Rev. Stat. Ann. § 354-A:3(XV).  Since I hold that plaintiff has stated a claim against the corporate defendant under Title VII (see above discussion), I also hold that plaintiff has stated a claim against the corporation under § 354-A, and I deny defendants' motion to dismiss, except as to any sexual harassment claim against the individual defendants.

### 2.    New Hampshire's Equal Pay Act

Plaintiff also alleges that defendants violated N.H. Rev. Stat. Ann. § 275:37 ["275:37"] which states:

> Equal Pay. No employer shall discriminate in the payment of wages as between the sexes, or shall pay any female in his employ salary or wage rates less than the rates paid to male employees for equal work or work on the same operations.

Plaintiff does not allege that her rate of pay was lower than that of similarly situated men.  Neither does she allege any facts indicating that Delahaye does not terminate and withhold commissions or benefits from men who complain about aspects of the work environment.  Section 275:37 necessarily involves a comparison of the employer's treatment of male and female employees.  Since plaintiff has not alleged any facts indicating that she was paid less due to her gender, I dismiss plaintiff's complaint regarding 275:37 for failure to state a claim.

## C.    Counts III, IV, V:  Intentional Torts

In Counts III, IV, and V, plaintiff asserts claims against defendants for the intentional torts of assault, false imprisonment, and intentional infliction of emotional distress.

Defendants move to dismiss Counts III and IV as to defendants Delahaye and Paine, and Count V as to all defendants, contending that these claims are barred by the exclusivity provision of New Hampshire's workers compensation statute, N.H. Rev. Stat. Ann. § 281-A:8 (1987) ["281-A:8"].

The version of 281-A:8 in effect at the time of plaintiff's employment (not materially different than the current version) read, in pertinent part: _____

> _____ Employees Presumed To Have Accepted. An employee of an employer subject to this chapter shall be conclusively presumed to have accepted the provisions hereof and on behalf of himself, or his personal or legal representatives, to have waived all rights of action whether at common law or by statute or otherwise:
>     I. Against the employer or the employer's insurance carrier; and
>     II. Except for intentional torts, against any officer, director, agent, servant, or employee acting on behalf of the employer or the employer's insurance carrier.

(emphasis added) N.H. Rev. Stat. Ann. § 281:12.

Section 281-A:8 bars employees from suing their employers for both intentional and unintentional torts. See O'Keefe v. Associated Grocers, 120 N.H. 834, 835-36 (1980) ("statute clearly prohibits an employee from maintaining a common-law action against his employer for personal injuries arising out of the employment relationship"); Censullo v. Brenka Video, Inc., 989 F.2d 40, 43 (1st Cir. 1993); Bourque v. Bow, 736 F.Supp. 398, 404 (D.N.H. 1990).  "Intentional tort" includes assault, false imprisonment, and intentional infliction of emotional distress. Thompson v. Forest, 136 N.H. 215, 219 (1992).  Therefore, I dismiss plaintiffs' intentional tort claims against defendant

-15-

Delahaye.

Section 281-A:8 also bars employees from suing their co-workers for unintentional torts committed in the course of their employment. See id. It does not, however, bar employees from suing their co-workers for intentional torts. See id.; Censullo, 989 F.2d at 44. Defendant Hasl was clearly plaintiff's co-employee, not her employer, therefore I deny defendants' motion to dismiss plaintiff's intentional infliction of emotional distress claim against him.

Defendant Paine presents a more difficult problem. To be able to "pierce the corporate veil" to reach Paine's assets for any judgment she may win against Delahaye, plaintiff argues in support of her Count IX that Paine was Delahaye's "alter-ego." If that is so, and if Paine was acting only as the owner of the corporation, Paine is entitled to immunity from suit under § 281-A:8. Stevens v. Lewis, 118 N.H. 367, 369-70 (1978) ("The jury must determine whether the defendant is the corporate alter ego . . . . [I]t must next determine whether the function [the defendant] allegedly performed negligently is a responsibility of the corporation or a responsibility of one employee to another.") However, even if Paine was the alter-ego of the corporation, if she acted in a "dual capacity," as employer and as an employee, she may be sued as a co-employee under § 281-A:8. Id. See also Robbins v. Seekamp, 122 N.H. 318, 321 (1982) (recognizing dual capacity doctrine where employee is injured by a machine negligently designed by employer); Quinn v. National Gypsum, Co.,

-16-

124 N.H. 418, 420 (1983) (recognizing, but not adopting, dual capacity doctrine); Tanguay v. Marston, 127 N.H. 572, 576 (1986) (president and principal shareholder of corporation was not alter ego, therefore not immune to suit).  But see Mello v. Gouin's Plumbing & Heating Co., 137 N.H. 675, 678-79 (1993), citing Holzworth v. Fuller, 122 N.H. 643, 645 (1982) (dual capacity doctrine did not enable employee to sue employer merely because employer was also owner of land on which injury occurred).  Read in the light most favorable to plaintiff, her complaint sufficiently alleges that even if Paine was Delahaye's alter ego, she had a duty as plaintiff's co-employee and supervisor to stop the alleged sexual harassment.  Therefore, I also deny defendants' motion to dismiss Counts III-V regarding defendant Paine.

**D.  Count VI:  Wrongful Discharge**

Perhaps due to a mistake, defendants' motion to dismiss does not literally address plaintiff's Count VI claim for wrongful discharge.  In their non-responsive answer to plaintiff's Count VII, however, defendants argue that plaintiff has failed to state a claim for wrongful discharge.  Because plaintiff responded to defendants' arguments, I will decide whether plaintiff has stated a claim for wrongful discharge.

Plaintiff does not dispute defendants' assertion that plaintiff was an at will employee under New Hampshire law.  See Panto v. Moore Business Forms, Inc., 130 N.H. 730, 739 (1988) ("an indefinite hiring is prima facie a hiring at will . . . in

-17-

the absence of legislative and judicial exception or a collective bargaining agreement") (quotations omitted). As an at-will employee, to state a claim for wrongful discharge, plaintiff must allege facts indicating that she was terminated (1) out of bad faith or malice or in retaliation, and (2) for performing acts which public policy would encourage or for refusing to perform acts which public policy would condemn. Short v. School Admin. Unit No. 16, 136 N.H. 76, 84 (1992).

Defendants concede that plaintiff has satisfied the first requirement, but they contend that plaintiff has not alleged facts indicating that her termination violated any public policy. Refusing to submit to sexual harassment, however, is clearly encouraged by public policy in New Hampshire. See N.H. Rev. Stat. Ann. § 354-A:8; Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 786 (1st Cir. 1990); Godfrey v. Perkins-Elmer Corp., 794 F.Supp. 1179, 1187 (1992). Because I have already held that plaintiff has successfully stated a claim of sexual harassment under Title VII and New Hampshire' equivalent, N.H. Rev. Stat. Ann. § 354-A, I deny defendants' motion to dismiss plaintiff's claim of wrongful discharge.

## E.   Count VII:   Breach of Contract

Plaintiff alleges that by denying her commissions and other benefits, defendant Delahaye breached its contract with plaintiff. Defendants mistakenly respond as if Count VII were a claim for wrongful discharge. Panto v. Moore Business Forms, Inc., 130 N.H. 730 (1988), which defendants cite in support,

appears to undermine their position. "There is no claim in this case that Moore cannot lay Panto off," the court summarized, "Panto simply wants the payments and benefits that Moore represented its laid-off employees would receive." Id. at 739. Rejecting Moore's numerous arguments, the court held that, despite the fact that Panto was an at-will employee, Panto and Moore had formed a contract which Moore had breached. Id. Because defendants fail to state clearly why plaintiff cannot recover on a breach of contract theory, defendants' motion to dismiss Count VII is denied.

## F.    Count VIII:  Consumer Protection Act

In Count VIII of her complaint, plaintiff alleges that defendants violated New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. Ch. 358-A (1984) ("CPA"). The CPA simply states, in pertinent part:

> It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive practice in the conduct of any trade or commerce within this state.

Id. at 358-A:2.

The CPA lists several examples of prohibited activities, all of which generally deal with the relationship between businesses and consumers, none of which deals with the relationship between employers and employees. See, e.g., id. at ¶ VI (falsely presenting used goods as new goods). The CPA also provides a complete list of exempt transactions which does not include transactions arising out of an employment. Id. at 358-A:3.

Plaintiff argues that the CPA should protect employees for two reasons. First, employees, properly understood, are merely consumers who trade their labor for money. Second, people are more vulnerable as employee-consumers than they are as marketplace consumers, therefore employees need greater protection.

The New Hampshire Supreme Court has never decided whether the CPA applies to employer-employee relations. In Roberts v. General Motors Corporation, 138 N.H. 532 (1994), it generally described the scope of the CPA, stating:

> The Consumer Protection Act is a comprehensive statute whose language indicates that it should be given broad sweep. Despite its broad language, however, it is not unlimited in scope.

Id. at 538 (citations omitted).[2]

The court also stated that although the CPA's list of specific examples of prohibited activities is not exhaustive, the application of the CPA is limited to the kinds of activities listed. Id. at 539.

I need not, however, extrapolate from Roberts to decide this issue. When New Hampshire precedent fails to answer a question regarding the CPA, the New Hampshire Supreme Court turns to "a well developed body of law defining trade and commerce in

---

[2] In Roberts, General Motors initially indicated that it would allow plaintiff to purchase one of its franchises, but later refused to sell the franchise to plaintiff because it preferred another buyer. See id. at 534. The New Hampshire Supreme Court held that General Motors' refusal to deal with plaintiff was not an unfair business practice under the CPA. Id. at 539.

-20-

Massachusetts, where the consumer protection statute . . . contains exactly the same definition of trade and commerce . . ." See Chase v. Dorais, 122 N.H. 600, 602, 448 A.2d 390, 391-92 (1982). Accord, Chroniak v. Golden Inv. Corp., 983 F.2d 1140, 1146 n.11 (1st Cir. 1993). Therefore, I examine the Supreme Judicial Court of Massachusetts' interpretation of Massachusetts' consumer protection statute, M.G.L.A c. 93A § 2 ("93A").

In Manning v. Zuckerman, 388 Mass. 8, 444 N.E.2d 1262, 1266 (1983), the Supreme Judicial Court held that 93A does not apply to conflicts arising from employment. Id. at 15. Manning was the editor of the Atlantic Monthly, Zuckerman the owner. Id. at 9. Manning claimed that Zuckerman engaged in an unfair or deceptive business practice within the meaning of 93A by refusing to pay the retirement benefits mandated by Manning's termination agreement. Id. at 8-10. The Court reasoned that the legislature intended to regulate the relationship between separate marketplace actors, not the relationship between members of the same company or organization. Id. at 12-13. It specifically rejected Manning's argument that trading his labor and services for a salary and other benefits was commerce within the meaning of 93A. Id. at 13. Accord, Bertrand v. Quincy Market Cold Storage & Warehouse Co., 728 F.2d 568, 571 (1st Cir. 1984); Weeks v. Harbor National Bank, 388 Mass. 141, 142-45, 445 N.E.2d 605, 606-08 (1983); Falmouth Ob-Gyn Assocs. v. Abisla 417 Mass. 176, 177, 629 N.E.2d 291, 292 (1994); Evans v. Certified Eng'q & Testing Co., 834 F.Supp. 488, 499 (D. Mass. 1993).

-21-

I decline to extend the protection of the CPA beyond the limit set by the Supreme Judicial Court of Massachusetts for that state's similar statute. Count VIII of plaintiff's complaint is dismissed.

## G. Count IX: Piercing the Corporate Veil

In Count IX of her complaint, plaintiff asks the court to pierce the corporate veil so that plaintiff may reach defendant Katherine D. Paine's assets in addition to the assets of Delahaye Group, Inc., Paine's corporation, to satisfy any judgment she may win against Delahaye Group, Inc.[3] In general, "New Hampshire courts do not 'hesitate to disregard the fiction of the corporation' when circumstances would lead to an inequitable result." Terren v. Butler, 134 N.H. 635, 639 (1991) (brackets omitted), citing Ashland Lumber Co. v. Hayes, 119 N.H. 440, 441 (1979) (quoting Peter R. Previte, Inc. v. McAllister Florist, Inc., 113 N.H. 579, 581, 311 (1973)). More specifically, in Druding v. Allen, 122 N.H. 823, (1982), the New Hampshire Supreme Court stated that ". . . a court may pierce the corporate veil if a shareholder suppresses the fact of incorporation, misleads his creditors as to the corporate assets, or otherwise uses the corporate entity to promote injustice or fraud." Id. at 827.

A lack of practical separation between the shareholder and the corporation, so that the corporation is merely the shareholder's "alter-ego," is an important sign that the

_____

[3] In New Hampshire, the equitable practice of piercing the corporate veil is also called the "alter-ego" doctrine.

-22-

shareholder has abused the corporate form. See, e.g., Terren, 134 N.H. at 640 (that defendants were sole officers and shareholders of corporation and commingled corporate and personal assets was significant factor in decision to pierce corporate veil). It is not, however, conclusive. The court must yet find that the shareholder used the corporate form to "promote an injustice or fraud." See, e.g., See, e.g., Village Press v. Stephen Edward Co., 120 N.H. 469, 471-72, 416 A.2d 1373 (1980) (owner of two one-man corporations was not liable for their debts).

Plaintiff alleges facts sufficient to show that Delahaye is Paine's alter-ego, e.g., she alleges that Paine did not observe corporate formalities in making major corporate decisions, but plaintiff does not specifically allege that Paine used the corporate form to commit fraud or to promote injustice. At worst, she alleges that Paine commingled her assets with Delahaye's assets, paying for personal assets with Delahaye's money and vice-versa. Commingling personal and corporate assets is not as egregious an abuse of the corporate form as transferring money from corporate to personal assets (or vice-versa) to avoid existing liabilities, see Terren, 134 N.H. at 639-40 and Stephenson v. Stephenson, 111 N.H. 189, 194, 278 A.2d 351, 355 (1971), concealing the fact of incorporation, or misleading creditors as to corporate assets. See Druding, 122 N.H. at 827. It would be inequitable, however, to limit plaintiff's recovery to Delahaye's assets if Paine has treated

-23-

Delahaye's assets as her own and paid her private expenses with Delahaye's money.  Therefore, to the extent that plaintiff claims she should be able to extract any judgment she may win entirely from Paine's personal assets, defendant's motion to dismiss is granted, but to the extent that plaintiff claims she should be able to extract from Paine's personal assets any portion of any judgment which Delahaye fails to pay, defendant's motion to dismiss is denied.

## IV.  CONCLUSION

In sum, for the foregoing reasons, I decide defendants' motion to dismiss (document no. 30) as follows:

| | |
|---|---|
| Count I | Granted in part and denied in part. |
| Count II | Granted in part and denied in part. |
| Counts III-V | Granted in part and denied in part. |
| Count VI | Denied. |
| Count VII | Denied. |
| Count VIII | Granted. |
| Count IX | Granted in part and denied in part. |
| SO ORDERED. | |

_____
Paul Barbadoro
United States District Judge

November 8, 1995

cc:  Duncan J. MacCallum, Esq.
     Lawrence B. Gormley, Esq.