UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Mary Chris Sheppard
and Robert Sheppard,
     Plaintiffs

     v.                                    Civil No. 00-111-M
                                           Opinion No. 2002 DNH 020
River Valley Fitness One, L.P.
d/b/a River Valley Club;
River Valley Fitness GP, L.L.C.;
River Valley Fitness Associates, Inc.;
Joseph Asch, and Elizabeth Asch,
     Defendants


**O R D E R**


     Mary Chris Sheppard and Robert Sheppard ("the Sheppards")

move for leave to amend their complaint to incorporate a theory -

piercing the corporate veil - under which Joseph Asch and

Elizabeth Asch ("the Asches") might be held personally liable to

pay any judgment Ms. Sheppard may be awarded against her

employer, River Valley Fitness Associates, Inc. and River Valley

Fitness GP, L.L.C. (collectively "the GP defendants"), on her

Title VII claims.  The Asches object on several grounds.  For the

reasons given below, the Sheppards' Motion for Leave to Amend

and/or Supplement Complaint Pursuant to FRCP Rule 15 (document

no. 151, hereinafter "Motion to Amend") is denied.

## Factual Background

The events underlying the Sheppards' claims in this case arose out of Ms. Sheppard's employment by River Valley Fitness One, L.P., which was doing business at all relevant times as River Valley Club ("RVC"). Both of the Asches served as managing supervisors of RVC. As indicated by its name, RVC is a limited partnership. It has approximately fifty-five limited partners and has had two successive general partners – River Valley Fitness Associates, Inc. ("RVFA") and River Valley Fitness GP, L.L.C. ("the LLC"). Mr. Asch was the secretary and treasurer of RVFA. Ms. Asch is the sole owner/member of the LLC, and serves as its chairman and president. Mr. Asch holds no position in the LLC. Both Asches have held themselves out as general partners of RVC.

As it currently stands, the Sheppards' case consists of: (1) two Title VII claims asserted by Ms. Sheppard against RVC, RVFA, and the LLC; and (2) two state-law claims brought by the Sheppards against the Asches individually.[1] RVC, RVFA, and the

---

[1] While not relevant to the question before the court, RVC filed a five-count counterclaim against Ms. Sheppard.

2

LLC are considered a single employer for purposes of the Title VII claims.[2] RVFA and the LLC are potentially liable to Ms. Sheppard in two different ways: as defendants in their own right, and as the successive general partners of RVC. While this case was moving toward trial, RVC filed for bankruptcy, and is now subject to the automatic stay provision of the bankruptcy code. Then, on the eve of trial, RVFA and the LLC also filed for bankruptcy protection, leaving Ms. Sheppard with no Title VII defendants not subject to the automatic stay.

At some point after RVC declared bankruptcy, but before RVFA and the LLC did so, defendants stated: "the two active defendants [RVFA and the LLC] have no assets from which to fund a defense of the case against them (or pay any award). They do not even have a bank account." (Defs.' Obj./Part. Consent to Pls.' Cond. Mot.

---

[2] The Asches are not defendants in the Title VII claims. By letter dated May 2, 2000, counsel for the Sheppards informed counsel for defendants that "the Asches were removed as defendants to those two counts [Ms. Sheppard's Title VII claims] in the First Amended Complaint . . ." (Defs.' Resp. Mem. on Piercing the Veil (document no. 145), Ex. 1), and by order dated October 16, 2001, the court (Muirhead, Mag. J.) denied the Sheppards' motion (based upon a single-employer theory) to amend their complaint to include the Asches as defendants in Ms. Sheppard's Title VII claims (see margin order on Pls.' Mot. to Amend Compl. (document no. 126)).

to Stay Countercls. at 3.) In a subsequent pleading, RVFA and the LLC offered further detail: "Both RVFA and LLC are mere entity shells, with absolutely no assets, past or present, from which to fund the trial or pay any judgment. Neither one has ever had an employee, and neither even has so much as a bank account." (Defs. RVFA's & LLC's Reply to Pls.' Reply Concerning Stay (document no. 137) ¶ 4.) In response, the Sheppards initiated their current attempt to "pierce the corporate veil" of the GP defendants, to hold the Asches personally liable for any judgment Ms. Sheppard might obtain against the GP defendants on her Title VII claims. The reasoning behind the Sheppards' position appears to be that if the Asches are the alter ego of the GP entities, then Ms. Sheppard's Title VII claim against the GP entities is necessarily a Title VII claim against the Asches individually as well.

After raising their veil-piercing argument in several different contexts, the Sheppards were directed, by order dated November 28, 2001, to brief at least four issues: (1) whether their veil-piercing theory had to be set out and supported by factual allegations in a complaint; (2) whether their theory

4

required their complaint to be amended, whether such an amendment should be allowed at this late date, and whether the subject matter of the amendment had to "relate back" to a time within the relevant limitation period; (3) whether the Asches would be entitled to additional preparation time, should the court allow the complaint to be amended; and (4) whether they (the Sheppards) could bring an action to pierce the corporate veil of an entity under bankruptcy protection without joining the bankruptcy trustee as a necessary party.[3]  In response to the court's order, the Sheppards move for leave to: (1) amend or supplement their complaint to incorporate a veil-piercing theory into Counts I and II (the Title VII claims); (2) amend their complaint to add factual allegations and a claim for attorney's fees to their

---

[3] While the Sheppards devote considerable attention in their brief to discussing whether a veil-piercing claim belongs exclusively to the bankruptcy trustee, they never answer the question posed by the court: whether the bankruptcy trustee would be a necessary party to their veil-piercing claim.  For reasons explained in Section III, the court is able to resolve the matter before it without reaching the question of the bankruptcy trustee's participation in a veil-piercing claim.  Nonetheless, the court notes that in Parting v. Nalco Chem. Co., 472 N.E.2d 1220 (Ill. App. Ct. 1984), a case whose reasoning the Sheppards urge the court to adopt, the Illinois Court of Appeals explained that when a creditor of a bankrupt corporation seeks to pierce the corporate veil, the interests of other creditors "may be protected, for example, by the joining of the chapter 7 trustee as a necessary party," id. at 1224 (citing Steyhr Daimler Puch of Am. Corp. v. Pappas, 35 B.R. 1001 (E.D.Va. 1983)).

5

state-law claim for intentional interference with advantageous relationship; and (3) serve a supplemental complaint that alleges abuse of process.  The Asches object, categorically.

**Discussion**

I.    Motion to Amend the Intentional Interference Claim

The Sheppards move for leave to amend their intentional interference claim (Count IV in the Second Amended Complaint, Count III in the Third Amended Complaint) to include new factual allegations concerning the Asches' conduct toward Ms. Sheppard during her employment by RVC, and to include a claim for attorney's fees.  The Asches object on grounds that: (1) the Sheppards' proposed amendment adds an entirely new cause of action for interfering with an ongoing – rather than prospective – contractual relationship; (2) the amendment does not "relate back," as required by FED. R. CIV. P. 15(c)(2); and (3) amendment at this time would violate, among other things, the scheduling order in this case.

Because the Sheppards' proposed alteration of their intentional interference claim concerns conduct that occurred

prior to the time they initiated this suit, the proper way to make that change is by amendment. See FED. R. CIV. P. 15. Rule 15 provides, in pertinent part:

> AMENDMENTS. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely granted when justice so requires. . . .

FED. R. CIV. P. 15(a). When ruling on a motion to amend, the applicable standard provides that

> [i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962) (quoting FED. R. CIV. P. 15(a). "Prejudice is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery." 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 15.15[2] at

7

15-45, 47 (3d ed. 2000) (citing <u>Bell v. Allstate Life Ins. Co.</u>, 160 F.3d 452, 454 (8th Cir. 1998); <u>McKnight v. Kimberly Clark Corp.</u>, 149 F.3d 1125, 1130 (10th Cir. 1998)).

The Sheppards characterize the proposed amendment as merely adding more facts or descriptive allegations to their basic claim for intentional interference with advantageous relationship, but that characterization is too modest. Rather than being merely a clarification, the proposed Count III either asserts an entirely different cause of action, or represents an attempt to import a substantial portion of Counts I and II, action on which has been stayed, into Count III, which remains unaffected by the bankruptcy stay.

In the Second Amended Complaint – the operative complaint in the case – Count IV (the intentional interference claim) alleges that the Asches interfered with Ms. Sheppard's prospective relationship with RVC by influencing RVC not to rehire her after she had resigned. Based upon the facts alleged in Count IV, the court, in an order dated September 28, 2001 (document no. 128), recognized Count IV as a claim for intentional interference with

a prospective contractual relationship, and ruled that the claim was not barred by Wenners v. Great State Beverages, Inc., 140 N.H. 100, 103 (1995) (citing Howard v. Dorr Woolen Co., 120 N.H. 295, 297 (1980); Thompson v. Forest, 136 N.H. 215, 216 (1992)) ("a plaintiff may not pursue a common law remedy where the legislature intended to replace it with a statutory cause of action"). The facts the Sheppards now seek to add to their intentional interference claim, concerning various actions by the Asches that "created a work environment that forced Plaintiff to resign . . ." (Third Amended Compl. ¶ 62), do not merely enhance the descriptive quality of that claim; they are presented in such a way as to assert a new theory of recovery, akin to wrongful constructive discharge, that was not asserted in Count IV of the Second Amended Complaint.

In the Sheppards' Second Amended Complaint, the gravamen of their Count IV claim is that the Asches kept RVC from rehiring Ms. Sheppard. In Count III of the proposed Third Amended Complaint, the Sheppards assert that the Asches improperly caused RVC not to rehire Ms. Shepard and also wrongfully caused Ms. Sheppard's resignation from RVC. Those are different wrongs,

remedied under different theories of recovery, each of which would require proving different sets of facts. Based only upon a comparison of Count IV in the Second Amended Complaint and Count III in proposed Third Amended Complaint, the court would ordinarily deny the motion to amend on grounds that an amendment asserting an entirely new cause of action, on the eve of trial, would unduly prejudice the Asches.

However, the claim the Sheppards seek to introduce into Count III is not new to this case. Under Count III of the proposed Third Amended Complaint, the Sheppards state:

> In addition, as described in ¶¶19-32 (which are incorporated in this Count), Joseph Asch interfered with Plaintiff's relationship with her employer by sexually harassing her. Further, both Joseph and Elizabeth Asch further interfered by attempting to intimidate employees who had complained about harassment and by failing to properly investigate or remedy the harassment. <u>This conduct forced Plaintiff to resign in December of 1998</u>.

(Third Am. Compl. ¶ 61 (emphasis added).) In Count I of both the second and third amended complaints, Ms. Sheppard charges RVC, RVFA, and the LLC with sexual harassment in violation of Title VII. Count II of both complaints, Ms. Sheppard's retaliation

10

claim, alleges that "[d]efendant retaliated against Ms. Sheppard for her complaints of sexual harassment by allowing Mr. Asch to have others undermine and threaten Ms. Sheppard, constructively discharging Ms. Sheppard . . . ."  (Second Am. Compl. ¶ 52; Third Am. Compl. ¶ 53 (emphasis added.)  Thus, plaintiffs appear to be attempting to rescue Ms. Sheppard's claim of sexual harassment from Count I and her retaliatory constructive discharge claim from Count II, both of which are subject to the bankruptcy stay.  In other words, the Sheppards are attempting to turn their Title VII claims against RVC, RVFA, and the LLC into a common-law tort claim against Mr. Asch, in which they would be able to rehearse their sexual harassment case.  Because the Sheppards themselves let the Asches out of Counts I and II, and because the court denied the Sheppards' motion to bring the Asches back into the Title VII action, the Asches have not been preparing to defend against those claims, and, on the eve of trial, it would be unduly prejudicial to force them to do so.  But, perhaps more importantly, the availability of a Title VII remedy for a constructive discharge resulting from either sexual harassment or retaliation bars Ms. Sheppard from pursuing a common-law cause of action for wrongful constructive discharge.  See Smith v. F.W.

11

Morse & Co., 76 F.3d 413, 428-29 (1st Cir. 1998) (citing Wenners, 140 N.H. 100; Howard, 120 N.H. 295).

II. Motion to Add Count IV: Abuse of Process

The Sheppards also seek to supplement their complaint by adding an entirely new claim for abuse of process. In particular, they seek to recover from the Asches for various alleged "abusive litigation tactics" (Mot. to Amend ¶ 35) that have occurred: (1) in this court, in this case; (2) in this court, in another case (Aubin v. River Valley Fitness One, L.P., et al., Civil. No. 00-110-B); and (3) in the bankruptcy court (with respect to the bankruptcy filing by RVFA and the LLC). The Asches object on both general and specific grounds. As a general objection, the Asches challenge the timeliness of the Sheppards' assertion, by amendment, of a new cause of action on the eve of trial. Specifically, they argue that the Sheppards can have no abuse of process claim because: (1) most of the legal processes allegedly abused by the Asches, such as actions taken in Aubin and the bankruptcy court, were directed toward parties other than the Sheppards; and (2) the one legal process that was directed

12

toward the Sheppards - the counterclaim in this case - was not brought by the Asches, but was asserted by RVC.

Because the Sheppards' claim for abuse of process is based upon conduct that occurred after they initiated this suit, the proper way to incorporate that claim into this case is by serving a supplemental complaint. See FED. R. CIV. P. 15(d). Rule 15 provides, in pertinent part:

> SUPPLEMENTAL PLEADINGS. Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

Id. While a pleading may be supplemented to include events occurring after it was filed, those after-occurring events must "bear some relationship to the subject of the original pleading." 3 MOORE'S FEDERAL PRACTICE § 15.30 at 15-108 (citations omitted). Finally, "the standard used by courts in deciding to grant or deny leave to supplement is the same standard used in deciding

13

whether to grant or deny leave to amend." Id. at 15-109 (citing Glatt v. Chicago Park Dist., 87 F.3d 190, 194 (7th Cir. 1996)); but see Burns v. Exxon Corp., 158 F.3d 336, 343 (5th Cir. 1998) ("While the text of Rule 15(a) provides that leave should be freely granted, the text of Rule 15(d) does not similarly provide. Rule 15(d) is clear that the court may permit a supplemental pleading setting forth changed circumstances.") (emphasis in the original).

Here, the Sheppards' proposed abuse of process claim bears no relationship, other than a fortuitous one, to the subject of their original claims. That is, the abuse of process claim pertains exclusively to the manner in which the Asches have conducted this – and other – litigation. While it is perhaps arguable that the Asches' allegedly abusive litigation tactics, vis à vis the Sheppards, represent a continuation of RVC's allegedly unlawful employment practices, vis à vis Ms. Sheppard, in that both sets of actions, if proven, harmed the Sheppards, the better view is that the Sheppards' proposed supplemental pleading represents something other than an attempt "to 'set forth new facts in order to update the earlier pleading . . .'"

14

Manning v. City of Auburn, 953 F.2d 1355, 1359-60 (11th Cir. 1992) (quoting Lussier v. Dugger, 904 F.2d 661, 670 (11th Cir. 1990)).

For example, in Keith v. Volpe, 858 F.2d 467, 474 (9th Cir. 1988), the court of appeals affirmed the district court's order allowing a supplemental pleading where the original complaint charged various state and federal agencies with failing to "meet federal statutory requirements concerning relocation payments, relocation assistance programs, and adequate replacement housing [for persons displaced by a new freeway]," id., and the proposed supplemental complaint charged a municipality, working on the same project, with "refusal to approve housing developments specifically meant to provide replacement housing for the Century Freeway displacees," id. In Keith, both the original pleading and the supplemental pleading charged the various defendants with malfeasance in the administration of their particular parts of the same federally funded highway project. See also Quaratino v. Tiffany & Co., 71 F.3d 58, 65-66 (2nd Cir. 1995) (reversing district court's denial of leave to supplement Title VII complaint alleging pregnancy discrimination under 42 U.S.C.

15

2000e(k) with claim for unlawful retaliation, based upon conduct by defendant after plaintiff filed discrimination charge with EEOC).

Here, by contrast, the Sheppards' original claims against the Asches are based upon the Asches' conduct as employers while the abuse of process claim concerns their conduct as litigants both here and in the bankruptcy court. On its face, the Sheppards' abuse of process claim is inappropriate subject matter for a supplemental pleading, and is denied on that ground alone.

Furthermore, even if their proposed abuse of process claim qualified as proper subject matter for a supplemental pleading, the court would necessarily deny the Sheppards' motion on grounds of undue prejudice. See Foman, 371 U.S. at 182 (listing undue prejudice as one ground for denying a motion to amend). The addition of an entirely new fact-driven cause of action for abuse of process on the eve of trial would prove to be at least as prejudicial as permitting the amendment of the intentional interference claim to add a claim for wrongful constructive discharge. See 3 MOORE'S FEDERAL PRACTICE § 15.15[2] at 15-45

16

("prejudice is especially likely to exist if the amendment involves new theories of recovery . . .").  In addition, denying the Sheppards' motion to supplement the complaint does not prejudice them.  Defendants' counsel has been sanctioned for the conduct alleged in paragraphs 67-69 of the proposed Third Amended Complaint, and, in any event, like the plaintiff in Al-Ra'id v. Ingle, 69 F.3d 28 (5th Cir. 1995), the Sheppards are free to refile their abuse of process claim in a new complaint if they so desire, id. at 33.

The Sheppards' motion to supplement their complaint with a new claim for abuse of process is also subject to denial on grounds of futility.  See Foman, 371 U.S. at 182 (listing futility as one ground for denying a motion to amend).  There are a number of ways in which a supplemental pleading might prove futile.  See generally 3 MOORE'S FEDERAL PRACTICE § 15.15[3].  A supplemental pleading is futile, and should not be allowed, when, among other things, "the complaint as amended could not withstand a Fed.R.Civ.P. 12(b)(6) motion."  Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1041 (6th Cir. 1991) (citing Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983)); see also

17

AM Int'l, Inc. v. Graphic Mgmt. Assocs., Inc., 44 F.3d 572, 578 (7th Cir. 1995) ("a judge should not grant a motion to amend the complaint if the grant would merely set the stage for the dismissal of the amended complaint").

Under New Hampshire law, which governs the Sheppards' proposed abuse of process claim,

> [o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

Long v. Long, 136 N.H. 25, 29 (1992) (quoting RESTATEMENT (SECOND) OF TORTS § 682 at 474 (1977)).

> A party claiming abuse of process must prove the following elements: (1) a person used (2) legal process, whether criminal or civil, (3) against the party (4) primarily to accomplish a purpose for which it is not designed and (5) caused harm to the party (6) by the abuse of process.

Long, 136 N.H. at 29. In a subsequent refinement of the legal definition of abuse of process, the New Hampshire Supreme Court explained:

18

The tort comprises two essential elements: an ulterior purpose and a wilful act in the use of the process not proper in the regular conduct of the proceeding. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

Cabletron Sys., Inc. v. Miller, 140 N.H. 55, 57-58 (1995) (quoting Clipper Affiliates v. Checovich, 138 N.H. 271, 277 (1994)).

In ¶ 67 of their proposed Third Amended Complaint, the Sheppards allege that the Asches misled the court with respect to the settlement in Aubin, for the purpose of obtaining favorable discovery rulings in this case. That allegation, however, would not survive a Rule 12(b)(6) motion to dismiss because the Sheppards do not claim that the Asches misled the court in order to obtain a "collateral advantage." Rather, the advantage the Asches sought, favorable discovery rulings in this case, was properly and directly involved in this case, and the Asches conduct in seeking that advantage has already been sanctioned.

19

(It would appear that the availability of sanctions in any given case is the reason why the tort of abuse of process requires that the advantage sought be collateral to the proceeding in which process has allegedly been abused.)

In ¶ 68, the Sheppards charge the Asches with using the court to obtain a protective order regarding a stipulation to judgment in the Aubin case, for the purpose of misleading the Sheppards as to the nature of the Aubin settlement, to scare the Sheppards into paying on the defendants' counterclaims in this case. While the issuance of a protective order plainly involves the exercise of the court's powers, see Long, 136 N.H. at 31, it is far from clear that issuing a protective order covering a stipulation to judgment in one case is an exercise of the court's powers over a litigant in a second case who was not a party to the first. In other words, it would not appear that the court's protective order in Aubin constitutes legal process directed against the Sheppards.

In ¶ 69, the Sheppards charge the Asches with various discovery abuses. These allegations fail to mention any exercise

20

of power by the court and, on that basis, could not survive a Rule 12(b)(6) motion. See Long, 136 N.H. at 31 (adopting the rule that "where a court's authority is not used, there is no 'process'").

In ¶ 70, the Sheppards claim that "[t]he Asches directed River Valley Fitness One, to countersue Ms. Sheppard, despite clear warning [from whom, the Sheppards do not say] that such suit should be considered unlawful retaliation for the purpose of intimidating Plaintiffs and trying to get them to drop their claims." As the Sheppards themselves readily acknowledge, the counterclaim against them was filed by RVC. If the counterclaim constituted an abuse of process, the proper defendant would be the party that filed the counterclaim, RVC. However, as a result of the bankruptcy stay, the Sheppards cannot bring an abuse of process claim against RVC in this court.[4] Unavailability of the proper defendant does not give rise to an abuse of process claim

---

[4] Interestingly, the conduct underlying the abuse of process claim in ¶ 70 of the Third Amended Complaint – filing the counterclaim – is the same conduct asserted in ¶ 53 of the Second Amended Complaint, which is part of Count II, Ms. Sheppard's Title VII retaliation claim. Thus, it would appear that ¶ 70 in the Sheppards' proposed abuse of process claim is also an attempt to rescue Ms. Sheppard's retaliation claim from the operation of the bankruptcy stay.

21

against third parties, such as the Asches, who did not initiate the disputed legal process.[5]  Because the Asches did not counterclaim against the Sheppards, the Sheppards' abuse of process claim against the Asches, based upon RVC's counterclaims, would not survive a Rule 12(b)(6) motion.

In ¶ 71, the Sheppards claim that "[t]he Asches directed their GP entities to file bankruptcy the afternoon before trial was scheduled to begin for the sole purpose of delaying the trial and/or avoiding potential personal liability for the Title VII claims."  While the Sheppards may well have been inconvenienced by the timing of the bankruptcy filing, the court cannot, on this record, characterize a bankruptcy filing by RVFA and the LLC as a legal process used by the Asches against the Sheppards. Moreover, while an automatic stay of Ms. Sheppard's Title VII claims necessarily followed the GP defendants' bankruptcy filings, the record before the court suggests that the GP defendants filed for bankruptcy for precisely the purpose

---

[5] The Sheppards do claim that while RVC filed the counterclaim, the Asches directed RVC to do so.  However, the Sheppards cannot attribute RVC's conduct to the Asches without piercing RVC's corporate veil, which it cannot do in this court, for reasons given in Section III.

22

bankruptcy is intended to serve.  The GP entities faced potential liability in Ms. Sheppard's Title VII action, and apparently have assets insufficient to pay their debts, including (but perhaps even exclusive of) any judgment that might be entered against them in favor of plaintiffs.  To the extent the Sheppards contend that the GP defendants' bankruptcy filing is somehow frivolous, determination of the validity of the bankruptcy petition is a matter committed in the first instance to the bankruptcy court. See Mason v. Smith, 140 N.H. 696, 700 (1996) (quoting Gonzales v. Parks, 830 F.2d 1033, 1036 (9th Cir. 1987)) ("Congress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties, including the kind of substantial damage awards that might be available in state court tort suits.").

Because the Sheppards' proposed abuse of process claim is not proper subject matter for a supplemental pleading, because it would unduly prejudice the Asches, and because it would be futile, the Sheppards' motion to supplement their complaint, by adding an abuse of process claim, is denied.

23

III. <u>Motion to Add a Veil-Piercing Theory to Counts I and II</u>

As a preliminary matter, the court must determine precisely how the Sheppards seek to incorporate a veil-piercing theory into their complaint.[6] There appear to be two possibilities, both of which are given voice in the motion. First, the Sheppards argue that "piercing the corporate veil is a common law, equitable remedy" rather than "a claim against the Asches." (Pls.' Mot. to Amend ¶ 22.) By characterizing their attempted veil piercing as a remedy rather than a cause of action, the Sheppards might avoid some problems posed by the statute of limitations. However, at several points in their motion, the Sheppards appear to characterize the attempted veil piercing as a claim against the Asches. (<u>See</u> Mot. to Amend ¶¶ 22, 23, 27, 40, 63.) And, in the

---

[6] The Sheppards suggest that this change may be accomplished either by amending their complaint, under FED. R. CIV. P. 15(a), or by supplementing it, under FED. R. CIV. P. 15(d), but the similarity between the legal standards applicable to granting those two forms of relief makes the distinction relatively unimportant. However, if it were required to decide whether the Sheppards must amend their complaint or supplement it, the court would be inclined to view this situation as calling for amendment. While the Sheppards appear to have learned about the GP defendants' alleged undercapitalization after they filed their original complaint, the facts they allege supporting their claim of undercapitalization – a complete lack of assets, past or present – were in existence since the inception of each of the GP entities, and, therefore, were in existence before the Sheppards filed suit.

24

proposed Third Amended Complaint, the Sheppards actually add the Asches as defendants to Counts I and II. The court need not determine whether the Sheppards' motion to amend involves the assertion of a new claim or merely the invocation of an equitable remedy, because under either theory, the motion fails.[7]

A.  Piercing the Veil as an Equitable Remedy

According to a district court decision relied upon by the Sheppards,

> Piercing the corporate veil is an equitable remedy, Matthews Const. Co., Inc. v. Rosen, 796 S.W.2d 692, 693 (Tex. 1990); Johnson v. Exclusive Properties Unlimited, 720 A.2d 568, 571 (Me. 1998), that allows a court to disregard the corporate entity and award relief against an individual on claims that might otherwise be limited to relief against the corporation. It is not a cause of action in itself. Rosen, 796 S.W.2d at 693 n. 1.

---

[7] The seemingly uncertain status of veil piercing as a remedy, a theory of recovery, or a claim, arises largely from the fact that a veil-piercing theory may be raised, as here, prior to judgment in a plaintiff's suit against a corporate defendant, see Matthews Const. Co. v. Rosen, 796 S.W.2d 692, 693 (Tex. 1990) (citing Gentry v. Credit Plan Corp., 528 S.W.2d 571 (Tex. 1975)), but may also be raised, as in Rosen, after judgment has been rendered against the corporate defendant.

25

<u>Mitsubishi Caterpillar Forklift Am. v. Superior Serv. Assocs.</u>

<u>Inc.</u>, 81 F. Supp. 2d 101, 112-13 (D. Me. 1999) (footnote

omitted).[8]


In <u>Mitsubishi</u>, the plaintiff sought to hold Superior's

president and fifty-percent owner, Craig Burkert (also a named

defendant), liable for various obligations allegedly owed by

Superior.  <u>Id.</u> at 112-13.  However, after explaining that

piercing the corporate veil is an equitable remedy rather than a

cause of action, <u>id.</u>, the court went on to hold that "[t]he

plaintiff [Mitsubishi] must make a case for recovery against

[Superior] before any consideration may be given to making

Burkert personally liable for that recovery as well."  <u>Id.</u> at

113.


Because any case for recovery against RVFA and the LLC must

be made in an adversary proceeding in the bankruptcy court, that

court is the proper forum for the Sheppards' pre-judgment veil-

piercing attempt, when veil piercing is understood as an

---

[8] According to <u>Rosen</u>, "the mere fact that a corporation operates as an alter ego does not give rise to a separate and independent cause of action . . .," 796 S.W.2d at 693, n.1.

equitable remedy that allows a plaintiff to collect a judgment against a corporation from its alter ego. In other words, without a Title VII defendant in this court that is not subject to the bankruptcy stay, plaintiffs currently have no underlying proceeding in which to make a case for recovery, which, according to Mitsubishi, is a necessary predicate for piercing the corporate veil. Before they can attempt to pierce the corporate veil in search of a remedy, the Sheppards must make their case on the merits against the entities whose veils they seek to pierce. But, because the bankruptcy court is the only forum in which they can seek a judgment against RVFA and the LLC, and because no such judgment has yet been obtained, the question of veil piercing is somewhat beside the point in this court at this time.

It is also worth noting that Rosen, the other case relied upon by the Sheppards for the proposition that piercing the corporate veil is an equitable remedy rather than a cause of action, is inapposite. In that case, plaintiff Matthews Construction had already secured a judgment against Houston Pipe & Supply Co., Rosen, 796 S.W.2d at 692. With judgment in hand, the plaintiff sought, in a separate proceeding, to collect that

27

judgment from Houston Pipe's president and sole shareholder, Harvey Rosen. Id. The issue before the court in Rosen was whether the plaintiff's alter ego suit against Rosen was barred by limitations. Id. at 693. That plaintiff, however, had already established the legal liability of the corporate defendant, and sought only to enforce its judgment against an alleged alter ego. Here, however, the legal liability of RVFA and the LLC has not been established, and cannot be established in any forum other than the bankruptcy court. Accordingly, under the Sheppards' equitable remedy theory, until they obtain a judgment against RVFA and the LLC, they must attempt to pierce the corporate veil in an adversary action in the bankruptcy court, and cannot do so now in this court. (And, if the plaintiffs did obtain a judgment, and if the Asches were held personally liable to pay the judgment, the recovery would not necessarily go to plaintiffs in its entirety. Rather, the newfound "ability to pay" would likely be deemed an asset of the bankruptcy estate and distributed among all creditors in accordance with bankruptcy law.)

Interestingly, the Sheppards cite <u>Rosen</u> for the proposition that "a piercing the corporate veil claim may be brought after a judgment." (Pls.' Mot. to Amend ¶ 22.) While plaintiffs might well be able to separately pursue their veil-piercing theory in this court at the conclusion of a successful adversary proceeding in the bankruptcy court, based upon the analysis in <u>Rosen</u>, it is unclear why they would want to do so. More to the point, however, given the possibility that the Sheppards may not prevail on the merits in an adversary proceeding against RVC, RVFA, and the LLC, there is no reason to hear a veil-piercing claim at this point. And, again, it would seem likely that the trustee in bankruptcy would be a necessary party if for no other reason than to protect the interests of other creditors.

B.   <u>Piercing the Veil as a Claim Against the Asches</u>

While the Sheppards argue that their attempt to pierce the veil is nothing more than the pursuit of an equitable remedy (for collecting a judgment they have yet to be awarded), their Third Amended Complaint (attached to document no. 151) lists the Asches as defendants under the two Title VII claims, and sets out various facts they intend to prove to establish that the

29

corporate veil should be pierced.  And, indeed, whether veil piercing is a remedy, a theory of recovery, or a claim, it seems beyond question that a plaintiff seeking to pierce a corporate veil – at any stage in the litigation of an underlying claim against a corporate defendant – must allege and subsequently prove a set of facts sufficient to warrant the pierce.  See, e.g., Mitsubishi, 81 F. Supp. 2d at 113 (assessing evidence submitted by both parties and granting summary judgment to defendant on veil-piercing claim).  In this case, the Sheppards' veil-piercing claim, as pled in their proposed Third Amended Complaint, rests upon assertions that: (1) the GP defendants are "mere empty shells," controlled by the Asches and possessing insufficient assets to meet anticipated obligations; and (2) the Asches held themselves out to employees of RVC as the limited partnership's general partners, operated the GP defendants to accomplish their own personal goals, and intermingled their own business transactions with those of the GP defendants.

The motion to add a veil-piercing claim to this case is also unavailing on grounds of futility.  As already noted, a motion to amend may properly be denied for futility.  See Foman, 371 U.S.

30

at 182. A motion to amend is futile if, among other things, the amended complaint could not survive a Rule 12(b)(6) motion. See Sinay, 948 F.2d at 1041 (citations omitted). The proposed veil-piercing claim would be futile in this case because it would not survive a Rule 12(b)(6) motion.

The Sheppards frame their claim in terms of state-law veil-piercing principles, but the validity of that claim must be decided under federal common law. Because plaintiffs seek to pierce the veil to hold the Asches liable for a potential judgment against the GP defendants on Ms. Sheppard's federal Title VII claims rather than on state-law claims, federal law controls. See Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co., 210 F.3d 18, 25-26 (1st Cir. 2000) (citations omitted) (holding that in federal question case, federal common law of veil piercing applies when national unity is essential in interpretation of federal statute). The court notes, in passing, that the federal veil-piercing standard is generally more favorable to a party seeking to pierce the veil than the state-law standard. Id. (quoting Capital Tel. Co. v. FCC, 498 F.2d 734, 738 (D.C. Cir. 1974) ("Federal courts are not bound by 'the

31

strict standards of the common law alter ego doctrine which would apply in a tort or contract action.'").

Turning to the standard that applies in this case, "the rule in federal cases is founded only on the broad principle that 'a corporate entity may be disregarded in the interests of public convenience, fairness and equity.'" Locomotive Eng'rs, 210 F.3d at 26 (quoting Town of Brookline v. Gorsuch, 667 F.2d 215, 221 (1st Cir. 1981)). Analysis under this standard is "notably imprecise and fact-intensive." Locomotive Eng'rs, 210 F.3d at 26 (quoting Crane v. Green & Freedman Banking Co., 134 F.3d 17, 21 (1st Cir. 1998)). Among the facts the court may consider is the "chronology of events." Locomotive Eng'rs, 210 F.3d at 31 (veil piercing appropriate when company at impasse in labor negotiations entered into arrangement with alleged alter ego, in order to exert pressure on labor union). In deciding whether to pierce the corporate veil, under the federal standard,

> courts should consider "the respect paid by the
> shareholders themselves to [the] separate corporate
> identity; the fraudulent intent of the [individual
> defendants]; and the degree of injustice that would be
> visited on the litigants by recognizing the corporate
> identity." Alman [v. Danin], 801 F.2d [1,] 4 [(1st
> Cir. 1986)]. Of these three elements, "a finding of

32

> some fraudulent intent is a sine qua non to the remedy's availability."  <u>See United Elec., Radio and Machine Workers v. 163 Pleasant Street Corp.</u>, 960 F.2d 1080, 1093 (1st Cir. 1992).

<u>Crane</u>, 134 F.3d at 22.  With respect to the question of public convenience, fairness, and equity, the court must "look closely to the purpose of the federal statute . . ."  <u>Locomotive Eng'rs</u>, 210 F.3d at 26 (quoting <u>Gorsuch</u>, 667 F.2d at 221); <u>see also</u> <u>First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba</u>, 462 U.S. 611, 630 (1983) ("[T]he Court has consistently refused to give effect to the corporate form where it is interposed to defeat legislative policies."); <u>United Elec., Radio & Mach. Workers</u>, 960 F.2d at 1091 ("in federal question cases, courts are wary of allowing the corporate form to stymie legislative policies").

<u>Locomotive Engineers</u> provides a useful example of veil piercing in a federal case.  There, the court allowed a trade union to pierce the veil of one corporate defendant (Springfield) when that corporation – which had a collective bargaining agreement with the trade union – used a second corporation (ABR), with which it had an almost total overlap of ownership, "as a

lever against the Unions, pressuring them to accept lower pay by changing the status quo in the middle of negotiations," id. at 33, a tactic which the Railway Labor Act ("RLA") was intended to prevent, id. In other words, the court pierced Springfield's corporate veil and attributed ABR's actions to Springfield for purposes of the union's suit alleging violation of the RLA, and did so because Springfield attempted to use the corporate form to thwart the purposes of Railway Labor Act.

Here, by contrast, the Sheppards have alleged no facts to support a claim that the Asches have attempted, with fraudulent intent, to use the corporate form to thwart the purposes of Title VII. Unlike the defendant in Locomotive Engineers, which began sending work to an alter ego not subject to its collective bargaining agreement, after it reached an impasse in labor negotiations, the Asches established the GP defendants before Ms. Sheppard ever made her Title VII claims. Moreover, alleged undercapitalization of those entities did not occur as a result of (or even after) Ms. Sheppard filed her Title VII claims; according to the Sheppards' own complaint, the GP entities never had any assets. If the Sheppards had alleged that the Asches had

34

set up the GP entities to siphon assets out of RVC after Ms. Sheppard filed her claim, or if they had alleged that the Asches had siphoned assets out of the GP entities after Ms. Sheppard had filed suit, then perhaps the veil-piercing claim might have merit. But the facts pled, even when viewed in the light most favorable to the Sheppards, do nothing more than establish that the Asches have set up various business entities with an eye toward limiting liability generally. See Gautschi v. Auto Body Discount Ctr., 139 N.H. 457, 462 (1995) (quoting Peter R. Previte, Inc. v. McAllister Florist, Inc., 113 N.H. 579, 582 (1973)) ("Certainly one of the desirable and legitimate attributes of the corporate form of doing business is the limitation of the liability of the owners to the extent of their investment.") The Asches business decisions, even if they serve to disadvantage the Sheppards in this case, do not constitute the kind of fraudulent conduct, leading to unfairness or inequity, necessary to pierce the corporate veil under the federal standard. Because the veil-piercing claim would be futile, the motion to amend the complaint to include a veil-piercing claim is denied.

As explained, the veil-piercing claim is resolved under federal law. There is, therefore, no need to conduct a separate analysis under the more rigorous state-law veil-piercing standard plaintiffs invoke. Nevertheless, one aspect of plaintiffs' state-law veil-piercing argument, the allegation of undercapitalization, merits brief comment.

The Sheppards correctly state the general New Hampshire rule that "[s]etting up a corporation with insufficient assets or plan for assets to meet its expected debts and obligations . . . can justify the remedy of piercing the corporate veil," Terren v. Butler, 134 N.H. 635, 641 (1991) (citing Directors Guild of Am., Inc. v. Garrison Productions, Inc., 733 F. Supp. 755, 762 (S.D.N.Y. 1990)).[9] However, that rule is not dispositive because

_____

[9] Undercapitalization may justify piercing the corporate veil when the owners of a corporation draw assets from the corporation at the expense of its obligees (customers or creditors), because, in such circumstances, undercapitalization represents (or results from) use of the corporate identity "to promote an injustice or fraud," Terren, 134 N.H. at 639 (citing Druding v. Allen, 122 N.H. 823, 827 (1982)). Here, the Sheppards rely upon an allegation that the GP defendants never had any assets, so they would be hard pressed to argue that the Asches improperly siphoned off or converted corporate assets to their own use, or intermingled their own personal assets with those of the GP defendants. Indeed, the only factual allegation supporting a claim of intermingling is that the Asches have paid, or at some future time will pay, the GP defendants' legal fees.

an allegation that the GP defendants had no assets, even if proven, would be insufficient to prove that the GP defendants were "undercapitalized."

"What is requisite capitalization in the modern credit-oriented economy depends a great deal on the nature of the industry involved and on the credit financing alternatives available." Harman v. Bertholet (In re Cycle-Rama, Inc.), 91 B.R. 647, 648 n.2 (Bankr. D.N.H. 1988) (applying New Hampshire law). Plaintiffs argue that the GP defendants were undercapitalized because they have insufficient assets to pay any judgment that may be awarded on Ms. Sheppard's Title VII claims. But the proper measure of the sufficiency of a corporate entity's capitalization is not whether it can pay a potential judgment in a lawsuit but, rather, whether it had sufficient assets to meet the obligations incurred by conducting ordinary business in the industry in which it operates. Because the Sheppards do not claim that the GP defendants had insufficient assets to perform their business functions, and, in fact, do not attempt to identify the business purposes for which the GP defendants were

---

That is a far cry from the standard form of intermingling, under which an alter ego treats the corporate assets as his or her own.

37

organized, the assertion that the GP defendants have "no assets," without more, is factually insufficient to support a claim that those entities were undercapitalized for purposes of veil piercing.[10]

The claim that the Asches held themselves out as general partners of RVC faces a similar infirmity. While the Asches may well have called themselves "general partners" of RVC, Ms. Sheppard has not alleged that she detrimentally relied upon that representation in relation to the events giving rise to her sexual harassment claim. Without reliance by Ms. Sheppard, an allegation that the Asches held themselves out as "general partners" of RVC would not subject them to personal liability for Title VII violations. If the Sheppards' proposed amendment is intended only to assert representations by the Asches sufficient to make them Ms. Sheppard's "employer" for Title VII purposes, then it fails because this court has already ruled that the Asches were not Ms. Sheppard's employer for purposes of her Title

---

[10] Some corporate entities, such as holding companies, legitimately require few assets to properly fulfill their corporate functions and purposes.

38

VII claims, and that ruling cannot be revisited now on the basis of an eleventh-hour amendment.

## Conclusion

For the reasons given, plaintiffs' Motion for Leave to Amend and/or Supplement Complaint Pursuant to FRCP 15 (document no. 151) is necessarily denied. The case shall proceed to trial on the remaining state claims asserted against the Asches in the Second Amended Complaint.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 24, 2002

cc: Lauren S. Irwin, Esq.
    William E. Whittington, IV, Esq.
    Joseph F. Daschbach, Esq.